## STATE v. JOSEPH BAKER.

Where, on a trial of a white man for the murder of a negro, the Solicitor for the State in the closing argument stated to the jury that he had been informed that there was a general feeling and purpose among the white citizens of the county, which had been pretty generally expressed during the trial, that no white man was to be convicted for killing a negro until a certain negro should be convicted for killing a white man in the county, and that he referred to the rumor not to create a prejudice in the minds of the jury against the prisoner, but to remove all prejudice from their minds opposed to a fair, manly and independent verdict according to their oaths, and to the law and testimony in the case: *It was held*, That the prisoner had no ground for complaint against the remarks of the Solicitor as being improper for the occasion.

A prisoner has no right to an instruction from the Court that if the jury do not believe the testimony of two named witnesses he is entitled to an acquittal, when the case stated shows that there were other witnesses who gave material testimony tending to prove his guilt.

The case of *Jenkins* v. *N. C. Ore Dressing Co.*, 65 N. C. Rep. 563, cited and approved.

INDICTMENT of a white man for the murder of a negro, tried before *Logan, J.*, at the last (Spring) Term of the Superior Court for MECKLENBURG county.

Upon the trial the prisoner was found guilty and appealed from the sentence of death which was pronounced upon

him. The facts are sufficiently stated in the opinion of the Court.

*J. H. Wilson & Son* and *W. H. Bailey*, for the prisoner.
*Attorney General Hargrove*, for the State.

SETTLE, J. The first exception of the prisoner, who is a white man, charged with the murder of a negro, is, " that the Solicitor for the State in his concluding argument to the jury, and in reply to the argument of the prisoner's counsel, stated to the jury that he had been informed by a number of persons during the progress of this trial, that there was a general feeling and purpose among the white citizens of the county, which had been pretty generally expressed during the trial, that no white man was to be convicted for killing a negro until a certain negro (meaning Lee Dunlap) was convicted for the murder of a white man by him in this county—that he referred to this rumor, not to create in the minds of the jury a prejudice against the prisoner, but to remove all prejudice from their minds opposed to a fair, manly and independent verdict according to the oath they had taken, and to the law and testimony in the cause," and that his Honor being requested to instruct the jury that the remarks of the Solicitor were extraneous to the testimony in the cause, and should be disregarded by them, failed to do so.

" It may be laid down as law, and not merely discretionary, that where the counsel *grossly* abuses his privileges to the manifest prejudice of the opposite party, it is the duty of the Judge to stop him then and there. And if he fails to do so and the impropriety is gross, it is good ground for a new trial."

It is difficult to lay down the line farther than to say that it must ordinarily be left to the discretion of the Judge who tries the cause, and this Court will not review his dis-

cretion, unless it is apparent that the impropriety of counsel was gross and well calculated to prejudice the jury. *Jenkins v. N. C. Ore Dressing Co.*, 65 N. C. Rep. 563.

We cannot know that the remarks of the Solicitor in the case before us were improper. They certainly import a grave charge upon a portion of the people of Mecklenburg county. But if untrue, they were calculated to arouse the indignation of the jury against the Solicitor and the cause he was pressing, and thereby prejudice the cause of the State instead of the prisoner. But if true, the course of the Solicitor, so far from being reprehensible, is to be commended.

If such a diseased sentiment as he portrays pervades any portion of a community, it poisons the very fountain of justice, and calls for the denunciation of all good men as well in Court-houses as out of them. Trials would be but the merest mockeries in communities where such a feeling exists, if it cannot be spoken of and rebuked.

2. The prisoner's counsel asked his Honor to instruct the jury that if they did not believe the testimony of Henry Severs and Dorcas Alexander the prisoner was entitled to a verdict of acquittal. The prisoner was clearly not entitled to this charge. Several witnesses had been examined on behalf of the prosecution and also of the defense, who testified to many material facts, and it would have been error had his Honor made the case turn upon the testimony of these two witnesses.

The prisoner being told by Severs to let the deceased alone, that he (Severs) could manage his own house; the prisoner having a knife about 12 o'clock that day; his washing his hands shortly after the fatal stab; his being told that if he stabbed the deceased he had better "git;" and his leaving and running across a field; his subsequent flight when parties approached to arrest him; his having a knife in his possession when arrested with discoloration upon it;

which witness thought was blood; his having purchased a knife a short time before like the one found upon him, and his attempt to show that he had no knife that day, were all facts testified to by witnesses other than the two upon whose testimony his counsel asked his Honor to make the case depend.

And further, the witness, Cross, introduced by the prisoner, testified that when the deceased was cursing another colored man about some whiskey, the prisoner "spoke up and said, you must not talk that way for there are white men in the house," and when the same witness passed the prisoner's house a half an hour afterwards, and told him that the boy who was stabbed at Severs' was dead, the prisoner asked him, who do the people say did it? Witness replied, the negro woman, Dorcas Alexander, said you did it, to which prisoner replied, "I did no such thing, for I had no knife, the woman is a negro and will not be believed."

It would appear from the testimony of this witness that the prisoner at least was relying upon the prejudice against negroes to screen him, although he complains of the Solicitor's caution against such prejudice.

The third and last exception has no foundation; his Honor's charge, upon reasonable doubt, was even broader and more favorable to the prisoner than his prayer for instruction.

There is no error. This will be certified.

PER CURIAM.                                    Judgment affirmed.