STATE OF NORTH CAROLINA v. ALBERT GERALD BROWN

STATE OF NORTH CAROLINA v. JIMMY MADDOX, ALIAS
BILLY CAMPBELL

STATE OF NORTH CAROLINA v. WILLIAM RILEY PHILLIPS

No. 7122SC728

(Filed 29 December 1971)

**1. Robbery § 2— attempted armed robbery — sufficiency of indictments**

Bills of indictment charging attempted armed robbery of "good and lawful U. S. Currency of the value of ............" from a named grocery store *held* sufficient to show that the U. S. currency had value, that the currency was under the care of two employees of the store, and that the defendants were not attempting to take their own property.

**2. Criminal Law § 15— motion for removal to adjacent county — unfavorable pretrial publicity**

A motion for removal to an adjacent county or for the selection of a jury from an adjacent county on the grounds of unfavorable pretrial publicity is addressed to the sound discretion of the court; the burden of proof on this motion is on the defendant.

**3. Criminal Law § 15— motion for removal to adjacent county — unfavorable pretrial publicity — sufficiency of affidavits**

Defendants' motion that unfavorable publicity warranted the removal of attempted armed robbery cases to an adjacent county or the selection of a jury from an adjacent county *held* properly denied by the trial court in the exercise of its discretion, where defendants' evidence in support of the motion consisted of only five newspaper articles, which contained factual accounts of defendants' attempted robbery, of defendants' arrest for the crime, and of defendants' escape from the county jail.

**4. Criminal Law §§ 101, 130— motion for mistrial — juror's hearing of defendants' escape**

The fact that a prospective juror had heard of defendants' escape from jail did not warrant a mistrial in defendants' trial for attempted armed robbery.

**5. Jury § 7— peremptory challenges — noncapital case**

Defendant in a noncapital case was not entitled to peremptorily challenge more than six jurors. G.S. 9-21.

**6. Criminal Law § 102— argument of solicitor — reference to defendant as "young animal"**

Portion of the solicitor's argument which referred to the defendant as a "young animal," although disapproved, was not prejudicial.

**7. Criminal Law § 102— solicitor's argument**

Portion of the solicitor's argument "If they [defendants] weren't guilty why were they up here anyway after the preliminary hearing where probable cause was found?" *held* not prejudicial within the context of this particular case so as to warrant a new trial.

**8. Robbery § 4— attempted armed robbery — sufficiency of the evidence**

Evidence of defendants' guilt of attempted armed robbery was sufficient to go to the jury.

**9. Criminal Law §§ 92, 102— consolidation of trial involving three defendants — right to closing argument to jury**

Where three defendants were charged with the identical felony of attempted armed robbery from the same persons and premises and at the same time, the trial judge did not abuse his discretion in allowing the State's motion to consolidate, even though the consolidation deprived the defendants from making the closing argument to the jury. G.S. 84-14.

**10. Jury § 3— qualification of jurors — summoning of jurors not on regular list**

Order of the trial judge requiring the sheriff to summon 25 additional jurors without resorting to the regular jury list was proper where the order required "that the jurors so summoned shall have the same qualifications and be subject to the same challenges as jurors selected from the regular jury list." G.S. 9-11(a).

**11. Robbery § 4— attempted armed robbery — sufficiency of evidence — effect of defendant's self-serving declarations**

In a consolidated trial of three defendants for the attempted armed robbery of a grocery store, evidence that one defendant, with a gun in his hand, was in the store at the time of the attempted robbery and that the defendant ran from the store and got into the car with the two other defendants, *held* properly submitted to the jury on the issue of the defendant's guilt, notwithstanding defendant's self-serving declarations at the time of the attempt, "I'm not in on this," and "I'll try to stop them for you."

APPEAL by defendants from *Beal, Judge,* 26 April 1971 Mixed Session of Superior Court held in DAVIDSON County.

The cases against these three defendants arose out of the same occurrence, and were consolidated for preliminary hearing on a warrant, proper in form, charging each of them in identical language with the felony of attempted armed robbery, in violation of G.S. 14-87. Probable cause was found at the preliminary hearing, and the cases were transferred to superior court for trial. Identical bills of indictment were returned against the defendants charging each with:

" . . . (U) nlawfully, wilfully, and feloniously, having in his possession and with the use and threatened use of firearms, and other dangerous weapons, implements, and means, to wit: a pistol whereby the life (sic) of Terry Lowery and Bradley Brogdon was endangered and threatened, did then and there unlawfully, wilfully, forcibly, violently and feloniously attempt to take, steal, and carry away good and lawful U. S. Currency of the value of _____ from the presence, person, place of business, and of Abernathy's Grocery contrary to the form of the statute in such case made and provided and against the peace and dignity of the State."

At the trial, each defendant pleaded not guilty.

State's witness Terry Lowery testified, in substance, that at 9 :15 p.m. on 11 February 1971, he and Bradley Brogdon were employees and were in charge of Abernathy's Grocery Store owned by Mr. and Mrs. Garland Abernathy in Lexington. At that time there was between three and four thousand dollars in cash in or near the cash register in the store. Defendant Jimmy Maddox, alias Billy Campbell (Maddox), entered the store and asked for a package of cigarettes, which were kept behind the cash register. Lowery gave the cigarettes to Maddox. Maddox had on a blue jacket. Defendant Albert Gerald Brown (Brown) had also entered the store and was at that time behind Lowery. Maddox told Lowery to empty the cash register, and Brown told Lowery that it was a holdup and to empty the cash register. Lowery turned toward Brown and Brown shot him in the hip with a .22 caliber weapon. Lowery went to the cash register and put his hands on it. Maddox said something and when Lowery looked toward him, Maddox shot him with a revolver, striking him in the face. Lowery then opened the cash register, got a pistol and started firing back at Maddox. Only the package of cigarettes was taken—no money was taken. Lowery was taken to the hospital where he remained for six days.

State's witness Bradley Brogdon testified, in substance, except where quoted, that he was "helping out" at Abernathy's Grocery on this occasion. He was at the counter where the drugs were and was waiting on a woman customer when someone came in the front door. While he was getting something the customer had requested, he heard the shooting on the other side of the store near the cash register. Brogdon testified he looked

and saw a "fellow with a blue jacket on crouched down over behind a pair of scales and a rack with some candy on it, about fifteen feet from me. After I heard the shooting going on up where Mr. Lowery was, I backed back in behind the drug shelf, the rack for the drugs. I got my gun out, out of my pocket. I fired one time at the fellow what (sic) was hiding over there. Then, instead of coming back out the way I went in behind the drug rack, I went, I came out behind the rack, in behind it, and the fellow standing there, when I walked behind there he was crouched down at the end of the ice cream box. I walked up in behind him and he raised up.

"I see that man in the courtroom today—the second man over there with the yellow tee shirt on. That's the man I know as William Riley Phillips. That is the man I saw crouched down there. He went toward the door. When he started toward the door I seen (sic) him with a gun in his hand. I followed him all the way out on the porch, out to where he hit the road; when he got on the road he started running down there at the car. When he started running, he got on down there and caught up with the fellow that had the blue jacket on, he was down there at the car, and both of them got in the same car. I didn't see but two people get in the car."

On cross-examination, Brogdon stated that after he had come up behind Phillips, Phillips said, "I'm not in on this," and "I'll try to stop them for you"; and that Phillips had then run out of the building with a gun in his hand and "caught up with the guy right at the car with the blue jacket on and both got in the same car. The man in the blue jacket was already right at the car." There were three people in the car as it pulled away.

Defendants Maddox and Phillips offered no evidence.

Defendant Brown offered evidence in the form of testimony by Ray Rollins, a reporter for the Winston-Salem Journal, who stated that he had attended the preliminary hearing in these cases and could not recall specifically what the State's witness Lowery had testified to regarding his identification of the defendant Brown.

Defendant Brown also offered as a witness District Court Judge Hubert E. Olive, Jr., who testified that he presided at the preliminary hearing in the case against Mr. Brown and that Terry Lowery had testified on direct examination for the

State that Brown was present in the store but on cross-examination, "he was somewhat less positive in his identification of Albert Gerald Brown."

The jury returned a verdict of guilty as to each defendant. From a judgment of imprisonment, each defendant appealed.

*Attorney General Morgan and Assistant Attorney General Rosser for the State.*

*Robert L. Grubb for defendant Albert Gerald Brown, appellant.*

*Barnes & Grimes by Jerry B. Grimes for defendant Jimmy Maddox, alias Billy Campbell, appellant.*

*Walser, Brinkley, Walser & McGirt by Walter F. Brinkley for defendant William Riley Phillips, appellant.*

MALLARD, Chief Judge.

The three indigent defendants each had different counsel assigned to represent them. As was proper under such circumstances, only one record was filed in this court. Each defendant made separate assignments of error. We therefore consider the appeal and assignments of each defendant separately.

[1]   None of the defendants moved to quash the bills of indictment. Both Maddox and Brown moved that judgment be arrested (without citing any reasons), but Phillips did not make such a motion. However, the State, in its brief, calls attention to the bills of indictment and cites the case of *State v. Owens,* 277 N.C. 697, 178 S.E. 2d 442 (1971). If the bill of indictment fails to charge a crime, judgment must be arrested, and allegations in the warrant cannot be used to supply a deficiency in the bill of indictment. *State v. Benton,* 275 N.C. 378, 167 S.E. 2d 775 (1969).

The bill of indictment in *State v. Owens, supra,* was held to be sufficient to withstand a motion to quash and to charge the crime of attempted armed robbery. It contained the following language:

> " . . . (C)arry away U. S. currency of the value of
> _____ from the presence, person, place of business, and
> residence of Harvey I. Stevens . . . . "

State v. Brown and State v. Maddox and State v. Phillips

The Supreme Court in *Owens* said:

" * * * The gist of the offense as described in this indictment is the attempt to commit robbery by the use or threatened use of firearms. The force or intimidation occasioned by the use or threatened use of firearms is the main element of the offense. In such a case, it is not necessary or material to describe accurately or prove the particular identity or value of the property, provided the indictment shows that the property was that of the person assaulted or under his care, and that such property is the *subject of robbery* and that it had *some* value. (Citations omitted.)

* * * In the present case the property involved is described as 'U. S. currency.' This is the subject of robbery and some value can be inferred from the description of the property itself. 'In an indictment or information for robbery by taking money, the term "money" itself imports some value, of which fact the court will take judicial notice.' 77 C.J.S. Robbery § 37. Money is recognized by law as property which may be the subject of larceny, and hence of robbery. * * * Here, we have an attempted robbery, and it is impossible to charge the exact value of the property involved, because no property was, in fact, taken." (Emphasis original.)

The bills of indictment in the case before us were rather crudely drawn, and it appears that the draftsman made an effort to see how much of the language contained in the warrants could be left out of the bills; however, we think the property attempted to be taken was adequately described and the bills were sufficient, when considered as a whole, to show that the U. S. currency had value and was under the care of Terry Lowery and Bradley Brogdon. They were also sufficient to negative the idea that the defendants were attempting to take their own property, to inform the defendants of the charges against them, and to support a plea of former jeopardy. See *State v. Mason*, 279 N.C. 435, 183 S.E. 2d 661 (1971) and 77 C.J.S., Robbery, §§ 36, 37, 38 and 39.

## BROWN APPEAL

[2, 3] Brown's first contention is that the trial judge committed error in denying the motion for removal of the cases

(due to unfavorable pretrial publicity) to an adjacent county for trial or to have the jury selected from an adjacent county as provided in G.S. 1-84.

The motion by the defendants for removal to an adjacent county or to cause a jury to be selected from an adjacent county on the grounds of unfavorable publicity was addressed to the sound discretion of the court. *State v. Porth,* 269 N.C. 329, 153 S.E. 2d 10 (1967) ; *State v. Childs,* 269 N.C. 307, 152 S.E. 2d 453 (1967) ; *State v. McKethan,* 269 N.C. 81, 152 S.E. 2d 341 (1967) ; 2 Strong, N. C. Index 2d, Criminal Law, § 15; 21 Am. Jur. 2d, Criminal Law, § 236. The burden of proof on this motion was on the defendant. 21 Am. Jur. 2d, Criminal Law, § 422. "A motion for change of venue or for a special venire, may be granted or denied in the discretion of the trial judge, and his decision in the exercise of such discretion is not reviewable here unless gross abuse is shown." *State v. Allen,* 222 N.C. 145, 22 S.E. 2d 233 (1942).

In support of their motion for a change of venue, all defendants offered the affidavit of Willie F. Everhart, in which it is asserted that, due to news coverage on radio and newspapers, "any jury composed of Davidson County people would have a preconceived or biased opinion," and that in his opinion these defendants could not receive a fair trial from such a jury. Attached to the motion as exhibits are purported reproductions of only five news items appearing on the front page of The Dispatch, the only daily newspaper published in Lexington.

The first of these articles was published on Friday, 12 February 1971, with the following headline: "Bandits Flee Empty Handed—Local Man Shot Foiling Holdup." The names of the "bandits" referred to do not appear in this article.

On Saturday, 13 February 1971, an article appeared under the headline: "Four Charged in Theft Attempt." In this article the defendants are named, and it is stated therein that Brown and Maddox were escapees from a Florida prison unit.

The next exhibit purports to be from the 5 April 1971 edition of The Dispatch and has the headline: "Two Recaptured Later—Three Escape from County Jail." In this article it is reported, among other things, that Brown, Maddox and Phillips overpowered a deputy sheriff and a trustee and escaped, and

that Phillips and Maddox were recaptured, but that Brown remained at large.

The fourth exhibit purports to be from the 6 April 1971 edition and has the headline: "Jail Escapee Still at Large." It is stated therein that the officers had used bloodhounds and an airplane in their efforts to apprehend Brown.

The last exhibit, purportedly from the Wednesday, 7 April 1971, edition of the paper, has the headline: "Third Escapee is Apprehended." In this article it is related that "Brown had been the object of a search since he and two other men escaped from jail here Monday morning."

No other newspaper articles are attached as exhibits, nor are the contents of any radio news broadcasts included. Nor did the defendants attach as exhibits any copies of articles, if any, appearing in the Thomasville Times or the Denton Record (two other newspapers published in Davidson County) or in the Winston-Salem Journal, a daily newspaper published in the adjoining county of Forsyth. The court found that, according to the last census, Davidson County had a population of 95,622 and that the Lexington Dispatch had a daily circulation of approximately 11,000.

The robbery was alleged to have occurred on 11 February 1971. After two days the newspaper in Lexington apparently did not consider it newsworthy because defendants offer as exhibits no articles after 13 February 1971 until after the alleged escape on 5 April 1971, and none dated after 7 April 1971. The trial was held at the 26 April 1971 Session of Superior Court held in Lexington, the county seat of Davidson County. Only three articles relating to the escape are made exhibits in support of the defendants' motion, and none appear after the date the defendant Brown was alleged to have been apprehended. These articles may be considered ordinary reporting of factual occurrences and do not appear to be inflammatory. While defendants, in their unverified motion, assert that the escape "caused widespread anxiety and animosity within the community," we find no evidence or implication in the record to support such an assertion. The daily newspaper published in Lexington apparently had no article about the trial on the date of the trial, because nothing appears in this record with respect thereto.

On this record we hold that no prejudicial effect on the trial jury has been shown and that the trial judge did not abuse his discretion in denying the defendant's motion for removal or a jury from another county on the grounds of pretrial publicity. See Anno., 33 A.L.R. 3d 17.

[4] Brown further contends, however, that the trial judge committed error in denying his motion for a mistrial, a motion made because a prospective juror had heard that the defendants had escaped from jail. The prospective juror, Jerry Brinkley, when asked if he had heard the case discussed in the community, said, "Except when they escaped, I heard that." There was no attempt to challenge this prospective juror for cause before he was peremptorily excused by the defendant Maddox. No authority is cited by Brown or any of the other defendants for his position. In the factual setting of this case, it was not prejudicial error to deny defendant's motion for a mistrial because of what this prospective juror said. See *State v. Andrews*, 12 N.C. App. 421, 184 S.E. 2d 69 (1971), *cert. denied*, 279 N.C. 727 (1971).

[5] Defendant Brown contends also that the trial judge committed error in not permitting him to exercise more than six peremptory challenges, because Brown asserts that most of the prospective jurors were acquainted with the case. G.S. 9-21 permits a defendant in cases other than capital to peremptorily challenge six jurors and no more. In this case the defendant did not challenge the three jurors for cause but sought only to challenge them peremptorily after he had used six peremptory challenges. (Defendant Phillips in his brief admits that there was no cause to challenge the jurors that he attempted to peremptorily challenge.) The trial judge did not commit error in failing to permit the defendant to peremptorily challenge more than six jurors. See *Freeman v. Ponder*, 234 N.C. 294, 67 S.E. 2d 292 (1951).

The defendant Brown assigns as error certain portions of the solicitor's argument to the jury. This was a hotly-contested case, and since the argument of defense counsel does not appear in the record, we are unable to determine if the solicitor was responding to provocation.

> "Counsel must be allowed wide latitude in the argument of hotly contested cases. But what is an abuse of this privilege must ordinarily be left to the sound discretion

of the trial judge, and we 'will not review his discretion, unless the impropriety of counsel was gross and well calculated to prejudice the jury,' *S. v. Baker,* 69 N.C. 147. (other citations omitted) Counsel should not go beyond the testimony in a case or characterize a defendant in a manner calculated to prejudice the jury against him. (citations omitted)" *State v. Bowen,* 230 N.C. 710, 55 S.E. 2d 466 (1949). See also *State v. Westbrook,* 279 N.C. 18, 181 S.E. 2d 572 (1971) ; *State v. Peele,* 274 N.C. 106, 161 S.E. 2d 568 (1968), cert. denied, 393 U.S. 1042, 21 L.Ed. 2d 590, 89 S.Ct. 669 (1969) ; and *State v. Barefoot,* 241 N.C. 650, 86 S.E. 2d 424 (1955).

[6]   One of the portions objected to was when the solicitor said, "He (Lowery) heard Maddox say something and turned around and lo and behold, that young animal shot him." It is conceded that a solicitor should not be permitted to heap verbal abuse, not warranted by the evidence, upon a defendant. While we do not approve of a defendant being referred to as an "animal," we cannot say that it was prejudicial error in this case to do so.

[7]   Another portion of the solicitor's argument to which the defendant objected is: "If they weren't guilty why were they up here anyway after the preliminary hearing where probable cause was found?" This statement came immediately after the solicitor had argued that the State contended that the defendants were guilty beyond a reasonable doubt upon the testimony of Lowery and Brogdon. We do not approve of the argument objected to, but in view of the fact that one of the defendants had offered evidence of what the State's witnesses had testified to at the preliminary hearing in an effort to impeach them, we do not think that it was of such a prejudicial nature as to warrant a new trial.

(We have examined the other exceptions of all the defendants to the argument of the solicitor, and while his argument might have been made in a less objectionable manner, we do not think that it was so unfair as to prejudice the jury against the defendants.)

[8]   Defendant Brown also contends that the trial judge committed error in overruling his motion to set aside the verdict as being contrary to the evidence in the case, and in failing to allow his motion in arrest of judgment. We hold that there

was ample evidence of Brown's participation in this attempted robbery and that both of these contentions are without merit.

## MADDOX APPEAL

[9] The assignments of error presented by the defendant Maddox relating to the motions for removal of his case to an adjacent county, selection of a jury from an adjacent county and for a mistrial because of statements made by a prospective juror on voir dire, and his objections to the argument of the solicitor are overruled for the reasons hereinabove set forth under the appeal of the defendant Brown.

Maddox further contends, however, that the trial judge committed error in consolidating these three indictments for trial, which resulted in depriving Maddox of the alleged right to make the closing argument to the jury. This contention is without merit. These three defendants were charged with the identical felony of attempted armed robbery from the same persons and premises and at the same time. The trial judge did not abuse his discretion in allowing the motion to consolidate. *State v. Blackburn,* 6 N.C. App. 510, 170 S.E. 2d 501 (1969) ; 2 Strong, N. C. Index 2d, Criminal Law, § 92. The time and sequence of the argument of counsel in a criminal case is controlled by G.S. 84-14 and the General Rules of Practice for the Superior and District Courts as set forth in volume 276 of the North Carolina Reports at page 735, *et seq.* Rule 10 thereof, in pertinent part, reads: "In a criminal case, where there are multiple defendants, if any defendant introduces evidence the closing argument shall belong to the solicitor."

[10] Defendant Maddox also assigns as error the two entries by the trial judge of an order requiring the sheriff to summon twenty-five additional jurors without resorting to the regular jury list. This contention is without merit. In each of the orders the trial judge required "that the jurors so summoned shall have the same qualifications and be subject to the same challenges as jurors selected from the regular jury list." This was in compliance with the statute that provides that "jurors so summoned shall have the same qualifications and be subject to the same challenges as jurors selected for the regular jury list." G.S. 9-11 (a). There is no contention made that the jurors actually summoned lacked the proper qualifications or were not subject to the same challenges.

Defendant Maddox also contends that the trial judge committed error in denying his motion for judgment as of nonsuit. This contention is without merit as there was ample evidence against the defendant Maddox to require submission of his case to the jury.

We have carefully considered all of the other assignments of error presented by the defendant Maddox and find no prejudicial error in his trial.

### PHILLIPS APPEAL

The assignments of error presented by Phillips relating to consolidating the three cases for trial, the motions for removal of his case to an adjacent county or for a special venire from an adjacent county, the motion for a mistrial because of statements made by a prospective juror on voir dire and the failure of the trial judge to grant a new trial due to the impropriety of the solicitor's argument are all overruled for the reasons hereinabove set forth under the considerations of the appeals of the defendants Brown and Maddox.

[11] In addition, however, the defendant Phillips argues and contends that the trial judge should have allowed his motion for judgment as of nonsuit. We disagree. The evidence tended to show that Brown, Maddox and Phillips were all in the store at the time of the attempted robbery. Each had a gun at the time of the shooting. Brown shot Lowery in the hip. Maddox shot Lowery in the face. Lowery was shot after Brown and Maddox had informed him "it was a holdup" and had demanded that he empty the cash register. Phillips, at the time Lowery was shot, was crouched down behind a pair of scales, and Phillips had a gun in his hand when he fled the store. Although he made two self-serving declarations, "I'm not in on this," and "I'll try to stop them for you," he ran and got into the car with the others and left. That Phillips was in the store at the time of the attempted robbery, with a gun in his hand, and that he ran and got in the car and left with the other two defendants, were circumstances sufficient to require submission of his case to the jury. See *State v. Stephens*, 244 N.C. 380, 93 S.E. 2d 431 (1956).

Lastly, the defendant Phillips assigns as error certain portions of the instructions given by the trial judge in his charge

to the jury. When the charge is construed as a whole, as we are required to do, we hold that no prejudicial error appears.

The result is:

Albert Gerald Brown — No Error.

Jimmy Maddox, alias Billy Campbell — No Error.

William Riley Phillips — No Error.

Judges HEDRICK and GRAHAM concur.