STATE OF NORTH CAROLINA v. HORACE PADGETT

No. 755SC892

(Filed 5 May 1976)

1. **Criminal Law § 15— motion for change of venue — pre-trial publicity**
   The trial court did not err in the denial of defendant's motion for a change of venue of his armed robbery trial because of pre-trial publicity where affidavits presented by defendant do not indicate that the pre-trial publicity was inflammatory or suggested defendant's guilt, and the newspaper articles were ordinary factual reports of the robbery and defendant's arrest for the crime.

2. **Criminal Law § 7— entrapment**
   Entrapment is a defense and the prosecution is barred only when it is established that the criminal intent started in the mind of the officer or agent of the State and by him was implanted in the innocent mind of the accused, luring him into commission of an offense which he would not otherwise have committed.

3. **Criminal Law § 121— entrapment — insufficiency of evidence**
   The evidence in an armed robbery case was insufficient to require submission of the defense of entrapment to the jury where it tended to show that a confidential informant told a police officer that a Winn-Dixie store would be robbed that day, the officer told the informant that if he participated in the robbery he would be charged with the robbery, the informant and several Winn-Dixie stores were placed under surveillance, officers saw defendant enter and rob a Winn-Dixie store while the informant waited in the getaway car, and officers thereafter arrested both defendant and the informant.

APPEAL by defendant from *Fountain, Judge.* Judgment entered 19 June 1975. Heard in the Court of Appeals 19 February 1976.

Defendant was charged in a bill of indictment with the felony of armed robbery of the Long Leaf Mall Winn-Dixie Store in Wilmington on 9 February 1975. One Jack Bentley was charged in a separate bill of indictment with the same offense. Upon motion of defendant Padgett, Padgett was tried separately from his co-defendant Bentley.

The State's evidence tends to show the following: On 9 February 1975 police officers of the City of Wilmington received information from Jack Bentley, a confidential informer for one of the officers of the Inter-Agency Bureau of Narcotics, that a Winn-Dixie Store would be robbed that day. As a result of this information, the several Winn-Dixie Stores in Wilmington were placed under police surveillance. At the time the information was received, the informer, Jack Bentley, was advised that if he participated in the robbery, he would be arrested and charged with robbery.

Jack Bentley was also placed under surveillance. Bentley drove to Horace Padgett's residence where Padgett joined him in Bentley's automobile. The police followed the car as Bentley drove through the Long Leaf Mall parking lot and paused several times in front of the Winn-Dixie Store. Bentley then drove out of town where he stopped on successive occasions at two convenience stores. He then drove back into town to the Long Leaf Mall parking lot. Finally Bentley stopped the car directly in front of the exit door of the Winn-Dixie Store. Horace Padgett went into the store with a sawed-off shotgun. Padgett held the shotgun to the head of one of the employees, Robert Finley, as he ordered the manager to take the money from the cash registers and place it in a paper bag. The manager knew and recognized Horace Padgett. At about this time Bentley blew the horn of his automobile, and Padgett fled through the store's exit door and to the car. Police called for Padgett to halt, but Padgett dropped the shotgun and jumped into Bentley's car with the bag of money. As Bentley drove away, the police fired shotguns and pistols. Bentley was hit by shotgun pellets and drove the car into a ditch a short distance from the parking lot. Bentley was apprehended in the car. Padgett ran from the car with the bag of money but was found in a short time hiding nearby in heavy bushes.

Defendant's evidence tends to show the following: Defendant started drinking on Saturday, 8 February 1975, and drank steadily until the afternoon of Sunday, 9 February 1975. On

State v. Padgett

Sunday afternoon Bentley came to Padgett's residence at approximately 2:20 p.m. Padgett obtained a sawed-off shotgun from his garage and put it in Bentley's car. A few minutes later Bentley and Padgett left in Bentley's automobile. Padgett was so drunk that he did not know what he was doing. When Bentley stopped in front of the Winn-Dixie Store, Padgett put a stocking over his head and walked into the store with the shotgun, but he didn't know what he was doing. Padgett saw the manager of the store whom he had known all his life, and he was handed a brown paper bag. He ran from the store, and when he heard a shotgun fire, he dropped the gun he was carrying and dove into the car. He did not realize what was going on. When the car ran into the ditch, Padgett was thrown out of the door, and he ran. He thought the police were trying to kill him. He hid in the bushes and surrendered shortly thereafter.

From a verdict of guilty as charged and judgment of imprisonment, defendant appealed.

*Attorney General Edmisten, by Associate Attorney Wilton E. Ragland, Jr., for the State.*

*Calder & Stanley, by Richard L. Stanley, for the defendant.*

BROCK, Chief Judge.

[1] Defendant argues that denial of his motion for a change of venue because of pre-trial publicity was error for which he is entitled to a new trial.

A motion for removal to an adjacent county or for the selection of a jury from an adjacent county on the grounds of unfavorable pre-trial publicity is addressed to the sound discretion of the trial court. The burden of proof on this motion is on the defendant. *State v. Brown* and *State v. Maddox* and *State v. Phillips*, 13 N.C. App. 261, 185 S.E. 2d 471 (1971), cert. denied and app. dism'd 280 N.C. 723, 724 (1972). Defendant offered the affidavits of nine residents of New Hanover County, each of whom opined that it would be difficult to select jurors from New Hanover County who had not heard the case discussed and formulated an opinion about the case. Defendant also offered copies of newspaper articles in support of his motion. The judge reviewed these affidavits and newspaper articles and denied defendant's motion.

None of the affidavits indicates that the pre-trial publicity was inflammatory towards defendant or suggested defendant's guilt. From a review of the newspaper articles, it appears that they were ordinary factual reports of a robbery, a confrontation with police, the arrest of defendant and Bentley, the charges against them, and their release on bond. Later articles reported additional arrests of defendant and Bentley and additional charges against them. But these articles were normal news reporting which contained no statements of evidence to be used against defendant and were not inflammatory. The record in this case fails to show that any juror objectionable to defendant was permitted to sit on the trial panel or that defendant exhausted his peremptory challenges. Defendant has failed to show an abuse of discretion by the trial judge. This assignment of error is overruled.

Defendant's assignments of error 3, 4, 5, 6, 9, and 11 are addressed to the rulings of the trial judge upon defendant's objections to evidence offered by the State. We have reviewed each of these and find them to be wholly without merit. A seriatim discussion would serve no useful purpose. Each of these assignments of error is overruled.

Defendant's assignments of error 15 and 16 are addressed to the denial by the trial judge of defendant's motions to strike "unresponsive" answers by two State's witnesses on cross-examination. It seems clear to us that the nature of the cross-examination called for the answers given. But, if defendant were correct in labeling the answers unresponsive, they were not prejudicial to defendant. These assignments of error are overruled.

Defendant's assignments of error 17, 19, and 20 are addressed to rulings of the trial judge upon defendant's objections to evidence offered by the State. We have reviewed each of these and find them to be wholly without merit. These assignments of error are overruled.

Most of the defendant's remaining assignments of error are related to what he perceived to be efforts to show a defense of entrapment.

[2] "It is, of course, elementary that the State has no business fostering crime and that it is no part of the duty of law enforcement officers to incite crime for the sole purpose of punishing it. But a 'clear distinction is to be drawn between

inducing a person to commit a crime he did not contemplate doing, and the setting of a trap to catch him in the execution of a crime of his own conception.' *State v. Burnette,* 242 N.C. 164, 169, 87 S.E. 2d 191, 194 (1955). The determinant is the point of origin of the criminal intent. Entrapment is a defense and prosecution is barred only when it is established that the criminal intent started in the mind of the officer or agent of the State and by him was implanted in the innocent mind of the accused, luring him into commission of an offense which he would not otherwise have committed. In this State the burden is on the defendant to establish the defense of entrapment to the satisfaction of the jury. (Citations omitted.)" *State v. Salame,* 24 N.C. App. 1, 210 S.E. 2d 77 (1974). The fact that officers or agents of the government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution, nor will the mere fact of deceit defeat a prosecution, "for there are circumstances when the use of deceit is the only practicable law enforcement technique available." *United States v. Russell,* 411 U.S. 423, 36 L.Ed. 2d 366, 93 S.Ct. 1637 (1973) ; *Hampton v. U. S.,* 44 U.S.L.W. 4542 (Apr. 27, 1976).

During the cross-examination of the Bureau of Narcotics officer for whom Jack Bentley had acted as an informer, defendant posed the following questions:

"Did you make a statement to any of the personnel of the court and particularly Judge Cowper that the Police Department was holding an innocent man in Jack Bentley?"

The State's objection was sustained.

"Immediately after this armed robbery out there what was the disposition of Jack Bentley's case?"

The State's objection was sustained. Thereafter the witness was permitted to answer the questions out of the hearing of the jury. The answer to the first question was: "No." The answer to the second question was: "The armed robbery warrant against Jack Bentley was dismissed."

Obviously defendant was not prejudiced by the trial court's ruling on the first question. The answer could not have been helpful to defendant's defense.

With respect to the second question, the defendant, the district attorney, the witness, and the judge already knew Jack Bentley was under indictment for the armed robbery. In fact, the State proposed to try defendant and Bentley jointly, but defendant successfully moved for a severance of Bentley's trial. The question propounded and the answer given were irrelevant because Bentley was actually under indictment at the time. It is clear from the evidence that Bentley was told by the officers prior to the robbery that if he (Bentley) participated in the robbery, he would be arrested, charged, and tried. One of the officers testified that Bentley was acting as an informer for him at the time of the robbery because of a narcotics violation for which the officer had arrested Bentley. If he had been permitted to do so, this officer would have testified that after the robbery the narcotics violation warrant was *nol prossed.* However, this testimony would have been irrelevant and collateral evidence. The officer had already testified that Bentley was told he would not be granted immunity if he participated in the armed robbery. There was also testimony that no police officer had instructed Bentley to participate in the armed robbery or had advised Bentley upon how to conduct the robbery if he did participate. Indeed, there was simply no showing of entrapment by the State's evidence either on direct or cross-examination.

When the defendant testified, he was not permitted to say what Bentley said to him or what Bentley thought. This restriction was, of course, proper. Bentley was not a party. His trial had been severed at defendant's request. Bentley was not a witness for the State nor for the defendant, albeit one of the grounds asserted by defendant in his motion for severance was that defendant wanted to call Bentley as a defense witness.

[3] It seems that if defendant had been in fact entrapped, Bentley's testimony would have been crucial. Defendant no doubt is aware of what Bentley's testimony would have disclosed. If it would have disclosed entrapment, no doubt defendant would have used his subpoena power to obtain Bentley's testimony. Defendant cannot make out a case of entrapment on mere supposition. In our opinion there was no showing of entrapment as a matter of law, nor was there a showing of entrapment sufficient to require submission of that defense to the jury. As pointed out in the summary of evidence, the defendant's main defense was intoxication, and this defense was submitted to the jury.

We have reviewed all of defendant's assignments of error, and they are overruled. In our opinion defendant had a fair trial free from prejudicial error.

No error.

Judges PARKER and HEDRICK concur.