STATE OF NORTH CAROLINA v. ANDREW WEDDINGTON CRAIG

STATE OF NORTH CAROLINA v. FRANCIS MARION ANTHONY

No. 257A82

(Filed 31 May 1983)

1. **Constitutional Law § 31; Criminal Law § 62— denial of motion for polygraph examination at expense of State—no error**

   Defendant failed to demonstrate how the trial court's denial of his motion for a polygraph examination to be conducted by the State Bureau of Investigation at the expense of the State was error since (1) defendant's credibility was never in issue at trial because he did not testify, (2) neither the record nor the brief indicated that a stipulation was entered into concerning the admissibility of polygraph test results, and (3) he failed to show that, as an indigent, he could not receive a fair trial without the requested assistance.

2. **Criminal Law § 99.2— pretrial remarks to jury—lapsus linguae**

   The trial judge's remark during the jury selection process that one defendant had entered a plea of guilty to a charge of common law robbery was merely a *lapsus linguae* not constituting prejudicial error even though defendant had pleaded not guilty to the charge since it was part of an introductory comment by the trial judge and since both prior to and subsequent to the judge's statement he informed the jurors that both defendants had pleaded not guilty to all charges.

3. **Jury § 7.12— challenge for cause of prospective juror—opposition to death penalty**

   The trial court properly sustained the State's challenge for cause of a prospective juror who indicated that she did not think she could vote for the death penalty.

4. **Criminal Law § 96— objection to improper testimony sustained—jury instructed to strike from their recollection**

   Where the trial judge sustained an objection and instructed the jury to strike a statement of a witness from their recollection of the evidence, the court properly withdrew the incompetent evidence from the jury, cured any possible prejudice, and properly denied defendant's motion for a mistrial.

5. **Criminal Law § 102.2— no error in State's argument**

   The defendant was not denied a fair trial when the prosecutor argued to the jury that they should compare a picture of the circular wounds on the victim's body and the soles of the defendant's shoes since defendant failed to object to the closing argument and since the evidence supported the inference that the defendant's shoes could have caused the circular impressions made on the neck of the deceased.

**State v. Craig and State v. Anthony**

**6. Criminal Law § 120— instructions on how to proceed if jury found defendant guilty**

A jury was made fully aware that they could find the defendant not guilty even though the trial judge gave detailed instructions on how to proceed if they found the defendant guilty and failed to instruct on what the jury should do if they found the defendant not guilty.

**7. Criminal Law § 48— implied admissions—properly admitted**

The trial court did not err by allowing a State's witness to testify, in reference to defendants, that "They said: 'We ------ them white folks up.'" "And then one of them said to the other, 'yea, we sure did, man.'" The statements were at least implied admissions by the defendants.

**8. Criminal Law § 102.6— argument to jury—failure to object—standard imposed**

Where defendants failed to object to the closing argument of the prosecutor, the standard of review was one of "gross impropriety."

**9. Criminal Law § 102.6— reference to defendants as wolves in jury argument—no "gross impropriety"**

Defendants were not denied a fair trial when the district attorney referred to them as "wolves" during his closing argument since the references to wolves and wolfpack were made to illustrate by way of analogy how concert of action leads to each of the defendants' responsibility for the murder of the victim, and the prosecutor's remarks were not abusive and were not an attempt to place before the jury his personal beliefs or opinions.

**10. Criminal Law § 102.6— argument to jury—reference to witness not called to testify**

The trial court did not err in allowing the prosecutor to make reference in his argument to the jury to a witness who was not called to testify by either the State or the defendant since the prosecutor's remarks were intended to make the jury aware that the State had not called a witness to testify because his testimony would have added nothing to its case and that its evidence was uncontradicted.

**11. Criminal Law § 102.7— jury argument—reference to witness's criminal record**

The prosecutor was properly allowed to argue that there was no evidence presented at trial which would suggest that the State's principal witness had a prior record since the prosecutor was merely arguing an inference which could logically arise in light of the very thorough and lengthy cross-examination conducted by defendant.

**12. Criminal Law § 135.4— sentencing phase—finding that murder especially heinous, atrocious and cruel**

The trial judge properly instructed the jury that they could find from the evidence that the murder of a victim was especially heinous, atrocious and cruel as provided for by G.S. 15A-2000(e)(9) even though the victim had a blood alcohol level of .29.

**13. Criminal Law § 102.10— argument to jury—discussion of mitigating circumstances**

Any error caused by the prosecutor commenting on the existence of a statutory mitigating circumstance was harmless since the trial judge peremptorily instructed the jury that the mitigating circumstance existed and since the prosecutor corrected a statement and argued only the weight that such a mitigating factor should be afforded.

**14. Criminal Law § 135.4— failure to submit request to take polygraph test as mitigating circumstance—no error**

The mere fact that a defendant desires to take a polygraph test is not, standing alone, evidence of a mitigating circumstance since a defendant's personal desire to submit to a polygraph examination, absent a police request, does not indicate a willingness to cooperate with the police.

**15. Criminal Law § 135.4— sentencing phase—referring to defendants as "human animals" and "wolfpack"**

The trial court did not err in allowing the prosecutor to refer to two defendants as "human animals" and members of a "wolfpack" during his closing argument at the sentencing phase of the trial since the prosecutor was arguing how the evidence supported the aggravating factor that the murder was part of a course of conduct which included the commission of crimes of violence against other people, since he was arguing that the defendants' senseless, cold-blooded actions were especially heinous, atrocious and cruel, and since the wolfpack analogy was supported by the evidence. G.S. 15A-2000(e)(11).

Justice EXUM dissenting as to sentence.

Justice FRYE joins in this dissenting opinion.

ON appeal by both defendants as a matter of right from the judgments of *Seay, Judge,* entered at the 22 February 1982 Session of Superior Court, CABARRUS County. Both defendants were charged in indictments, proper in form, with the murder of Edith Davis Ritch, with robbery with a dangerous weapon of Edith Davis Ritch and with the common law robbery of Seab Albert Ritch. The jury returned verdicts of guilty on each charge as to each defendant and recommended the sentence of death for both defendants for their first degree murder convictions. Judge Seay imposed a forty year sentence against each defendant for robbery with a dangerous weapon, each sentence to run consecutively to the sentence imposed for the first degree murder of Edith Ritch. Judge Seay also imposed a ten year sentence against each defendant for the common law robbery of Seab Ritch with the sentences to run consecutively to the sentences imposed for the robbery with a dangerous weapon conviction. Judge Seay ordered the im-

position of the death penalty against each defendant for the first degree murder of Edith Ritch. On 24 November 1982 we granted the defendants' motions to bypass the Court of Appeals on the common law robbery and robbery with a dangerous weapon convictions.

In relevant part the State's evidence tended to show the following: Seab and Edith, husband and wife, left their home in Concord on 3 July 1981 and went to a friend's home in Charlotte for the purpose of drinking alcoholic beverages. The Ritches drank heavily from 3 July 1981 until 8 July 1981, at which time they decided to return to their home in Concord. Seab and Edith Ritch consumed large quantities of intoxicants on 8 July 1981 and on their way home decided to stop under a bridge on the Rocky River Road in order to finish drinking a bottle of vodka. After stopping at the bridge Seab Ritch left his vehicle, walked down to the river's edge where a man was fishing and offered the man a drink. At this time Edith Ritch was in the passenger's seat of the Ritch vehicle.

After awhile five persons, including the defendants, began fishing on the opposite side of the river from where Seab Ritch was located. There was some conversation across the river causing the defendants and Betty Howie to come over to where Seab Ritch was sitting for the purpose of getting a drink. After drinking Mr. Ritch's vodka the defendants attacked and beat Mr. Ritch and took from his possession a wallet, some cash and a pocket knife. When this was completed they descended upon Edith Ritch who was extremely intoxicated with a blood alcohol level of at least .29. After telling the defendants that she had no money Edith Ritch was jerked from her vehicle and thrown to the ground. The defendant Craig took the pocket knife obtained from Seab Ritch and began stabbing Edith Ritch as she begged him not to kill her. After repeatedly stabbing the victim the defendant Craig handed the knife to Betty Jean Howie, an accomplice, who testified on behalf of the State pursuant to a plea bargain. She stabbed the victim repeatedly in the abdomen. Then the defendant Anthony took the knife and stabbed Edith Ritch until death ensued. In all Edith Ritch was stabbed thirty-seven times.

Before leaving the scene the defendants removed from the Ritch vehicle Edith Ritch's pocketbook, an F.M. radio converter

and the truck's battery. The defendants left in a car driven by Betty Jean Howie's brother, Bobby Howie, who was not involved in either incident. The defendant Craig was arrested for murder on 10 July 1981 and defendant Anthony was arrested for murder on 12 July 1981.

The defendants did not present any evidence during the guilt phase of the trial.

At the end of all the evidence the jury found each defendant guilty of first degree murder, robbery with a dangerous weapon and common law robbery.

At the sentencing hearing for the first degree murder convictions the State relied on its evidence presented during the guilt determination of the trial and did not present any additional evidence. In each case the State relied on three circumstances in aggravation: (1) That the murder was committed for pecuniary gain, (2) that the murder was especially heinous, atrocious and cruel and (3) that the murder was part of a course of conduct in which other crimes of violence were committed against other persons by each defendant.

The defendant Francis Marion Anthony did not present any evidence at the sentencing phase of this trial. In his case the court in mitigation submitted to the jury: (1) That Anthony had no significant history of prior criminal activity and (2) that the jury should consider any other circumstance or circumstances arising from the evidence which is deemed to have mitigating value. The jury unanimously found the existence of all three aggravating circumstances, found the existence of at least one mitigating circumstance and found that the aggravating circumstances outweighed the mitigating circumstances beyond a reasonable doubt. Thereupon, the jury recommended and the court so ordered the imposition of the death penalty.

The defendant Andrew Weddington Craig offered the testimony of his mother during the sentencing phase of the trial in order to show that he supported his wife, attended church and was a good son. In his case the court in mitigation submitted four circumstances for the jury's consideration. The jury unanimously found the existence of all three aggravating circumstances, found the existence of at least one mitigating circumstance and found

that the aggravating circumstances outweighed the mitigating circumstances beyond a reasonable doubt. As a result the jury recommended and the court so ordered the imposition of the death penalty.

Additional facts relevant to the defendants' assignments of error will be incorporated into the opinion.

*Rufus L. Edmisten, Attorney General, by Assistant Attorney General Charles M. Hensey, for the State.*

*W. Erwin Spainhour, for the defendant-appellant Andrew Weddington Craig.*

*James C. Johnson, Jr., for the defendant-appellant Francis Marion Anthony.*

COPELAND, Justice.

GUILT PHASE — CRAIG

I.

[1] In his first argument the defendant, Craig, contends that the trial court erred by denying his motion for a polygraph examination to be conducted by the State Bureau of Investigation at the expense of the State. The defendant maintains that by refusing his request the trial court denied him a valuable tool which could have bolstered his credibility at trial and would have aided his attorney's preparation of his defense. The defendant has failed to demonstrate how the trial court's denial of his motion was error.

In the first instance the defendant's credibility was never in issue at trial because he did not testify. In addition the results of a polygraph test could not have been admitted into evidence for any purpose absent a stipulated agreement between the defendant and the State. *State v. Milano*, 297 N.C. 485, 256 S.E. 2d 154 (1979). Neither the record nor the briefs indicate that a stipulation was entered into concerning the admissibility of polygraph test results. Therefore the polygraph test results, even if available and helpful, would not have been admissible to bolster the defendant's credibility. Secondly, the defendant, in requesting the polygraph test results for the purpose of preparing his defense, is asserting that he, as an indigent, is entitled to state financed expert assistance. In *State v. Gray*, 292 N.C. 270, 233 S.E. 2d 905

(1977), we held that expert assistance need only be provided by the State when the defendant can show that it is probable that he will not receive a fair trial without the requested assistance. The defendant fails to explain and we do not see how the polygraph test would have aided the preparation of his defense. We, therefore, find no error. We note that the trial in this case took place prior to our decision in *State v. Grier*, --- N.C. ---, 300 S.E. 2d 351 (1983), in which we held that polygraph evidence was no longer admissible at trial in any case, and thus would be of no assistance to him upon retrial.

II.

[2] During the jury selection process after the first twelve jurors were seated the trial judge made some introductory remarks including the following:

> The defendant, Andrew Weddington had (sic) also come into Court and has entered a plea of guilty to a charge that on July 8, 1981, he did commit Common Law Robbery in that he did, with force, assault Seab Albert Ritch, put him in fear, and that he did then unlawfully and feloniously take and carry Mr. Ritch's property valued at $14.00, being a man's wallet with $4.25 in currency.

The defendant Craig contends that this statement by the trial judge was an expressed opinion as to the defendant's guilt since he had in fact pleaded not guilty to the charge of common law robbery. We find the trial court's statement to be merely a *lapsus linguae* not constituting prejudicial error. *State v. Poole*, 305 N.C. 308, 289 S.E. 2d 335 (1982). Although the above statement was part of an introductory comment by the trial judge, it should be considered within the context of all the introductory remarks. This is the method for reviewing jury charges, *State v. Poole, supra,* and should be applicable to opening remarks. In reviewing the entire statement made to the prospective jurors we find that prior to this unfortunate slip of the tongue the judge told the jurors that both defendants pleaded not guilty to all charges. In addition, at the end of his opening remarks the trial judge reminded the prospective jurors that each defendant is presumed innocent as a result of his pleas of not guilty. The reference to defendant Craig's plea of guilty was not repeated and appears from the record to be totally accidental. In fact defense counsel

did not attempt to have this remark corrected and this *lapsus linguae* might very well have gone unnoticed until counsel began preparing his record on appeal. We, therefore, find no prejudice to the defendant and overrule this assignment of error.

## III.

[3]   Defendant Craig next assigns as error the trial court's decision to sustain the State's challenge for cause of prospective juror Mrs. Forrester. The defendant maintains that although Mrs. Forrester unequivocally stated that she would not impose the death penalty she could not be properly challenged for cause because the prosecutor and the court led her to that conclusion. In reviewing Mrs. Forrester's responses in their entirety, it appears that her initial response that she did not think she could vote for the death penalty would have been sufficient to sustain a challenge for cause. *State v. Williams*, 305 N.C. 656, 292 S.E. 2d 243 (1982), *cert. denied*, --- U.S. ---, 103 S.Ct. 474, 74 L.Ed. 2d 622 (1982). As noted in our recent decision of *State v. Kirkley*, --- N.C. ---, --- S.E. 2d --- (filed 3 May 1983), the trial judge must view the juror's demeanor and responses in determining the degree of conviction in the prospective juror's answers. The trial judge in this case, through an abundance of caution, wanted the juror to give a clear "yes" or "no" answer. Not once throughout her examination did Mrs. Forrester indicate that she might vote for the death sentence under any circumstance. We find no violation of the rule established by the Supreme Court of the United States in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed. 2d 776 (1968). This assignment of error is overruled.

## IV.

[4]   During the State's case in chief, Betty Jean Howie testified to the facts and circumstances surrounding her involvement in and the defendants' participation in the robbing of Seab Ritch and the stabbing of his wife Edith Ritch. In corroboration of Betty Howie's testimony the State offered as evidence a statement given to Special Agent Barry M. Lea of the State Bureau of Investigation by Betty Howie on 24 August 1981, approximately six weeks after the alleged incidents. The statement was read to the jury by Mr. Lea. The defendant objected to the statement "Sonny said, 'Let's rob the mother -----' " on the grounds that it did not corroborate Betty Howie's testimony. The trial judge sustained

the objection and instructed the jury to strike that statement from their recollection of the evidence. The defendant assigns as error the trial judge's denial of his motion for a mistrial on the grounds that the statement was so prejudicial that it prevented him from receiving a fair trial. A motion for mistrial is addressed to the sound discretion of the trial judge and those rulings will not be reversed on appeal absent an abuse of discretion. G.S. 15A-1061; *State v. Smith*, 301 N.C. 695, 272 S.E. 2d 852 (1981). "[W]hen the court withdraws incompetent evidence and instructs the jury not to consider it, any prejudice is ordinarily cured." *State v. Smith*, 301 N.C. at 697, 272 S.E. 2d at 855. The trial judge's instructions in the case *sub judice* cured any possible prejudice which could have only been slight in the light of all the testimony. This assignment of error is overruled.

V.

[5]   The defendant Craig also maintains that he was denied a fair trial when the prosecutor argued to the jury that they should compare a picture of the circular wounds on the victim's body and the soles of the defendant's shoes in order to reach the conclusion that the wounds were caused by the defendant's shoes when that conclusion was not supported by expert testimony. The defendant contends that through this argument the prosecutor improperly placed before the jury incompetent and prejudicial matters based on his own beliefs not supported by the evidence. *State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976); *State v. Britt*, 288 N.C. 699, 220 S.E. 2d 283 (1975). However, trial counsel is allowed wide latitude in his argument to the jury and "may argue the law and the facts in evidence and all reasonable inferences drawn from them. . . ." *State v. Kirkley*, --- N.C. ---, --- S.E. 2d --- (slip opinion p. 19 (1983)); *State v. Monk*, 286 N.C. 509, 212 S.E. 2d 125 (1975).

The defendant failed to object to the closing argument and therefore may now only assert that the trial judge should have corrected the argument *ex mero motu.* In a case where the defendant fails to object to the State's closing argument the standard of review is one of gross impropriety. *State v. Kirkley*, --- N.C. ---, --- S.E. 2d --- (filed 3 May 1983, p. 19); *State v. Johnson*, 298 N.C. 355, 259 S.E. 2d 752 (1979).

The defendant's basis for this assignment of error is that one of the State's own expert witnesses was unable to testify that

shoes belonging to the defendant had any relation to the murder. As a result the defendant contends that the prosecutor should not have argued to the jury that the physical evidence supported the conclusion that the defendant's shoes made a mark on the deceased victim's neck. The record reveals that the expert witness to which the defendant refers was qualified only as an expert in fingerprint identification. The fact that a fingerprint expert was unable to connect the shoes to the murder does not preclude the conclusion that the prosecutor argued to the jury. The evidence presented, including the testimony of the State Medical Examiner, supports the inference that the defendant's shoes could have caused the circular impressions left on the neck of the deceased. The fact that no expert was called to establish this connection merely goes to the weight of the evidence. We find no error in the State's argument and therefore no gross impropriety which would require the trial judge to act *ex mero motu.* This assignment of error is overruled.

## VI.

[6]  The defendant Craig next asserts that the trial court erred when it failed to instruct on what the jury should do if they found the defendant not guilty. The defendant contends that the error was highlighted by the fact that the judge gave detailed instructions to the jury on how to proceed if they found the defendant guilty. "It is well established in this jurisdiction that a charge is to be construed as a whole and isolated portions of a charge will not be held prejudicial where the charge as a whole is correct and free from objection." *State v. Poole,* 305 N.C. 308, 324, 289 S.E. 2d 335, 345 (1982). A review of the judge's charge to the jury makes it obvious that the jury was made fully aware that they could find the defendant not guilty. The judge's instructions as a whole did not express an opinion as to the guilt or innocence of the defendant. We find no prejudice in the trial judge's instructions and therefore overrule this assignment of error.

## GUILT PHASE—ANTHONY

### VII.

[7]  Defendant Anthony contends that the trial court committed a prejudicial error by allowing State's witness John Howie to testify about alleged statements made by the defendants when

Mr. Howie could not identify which defendant made the statements. The defendant maintains that the statements were inadmissible hearsay denying him the right to confront the declarant. The witness, Mr. John Howie, was seated in the front seat of a car in which both defendants and Betty Jean Howie were seated in the back seat. Mr. Howie testified to and the defendants object to the following statement, "They said: 'we ------ them white folks up.' " "And then one of them said to the other, 'yea, we sure did, man.' " Mr. Howie was unable to identify who made the statements but he did testify that the statements were made by the defendants (the two males) while both were in the back seat of the car.

These statements are at least implied admissions by the defendant Anthony. *State v. Spaulding,* 288 N.C. 397, 219 S.E. 2d 178 (1975), *death sentence vacated,* 428 U.S. 904, 96 S.Ct. 3210, 49 L.Ed. 2d 1210 (1976). The test for determining whether a statement made by a co-defendant can be admitted into evidence as an implied admission was clearly stated by Justice Branch (now Chief Justice) in *State v. Spaulding, supra:*

> (I)f the statement is made in a person's presence by a person having firsthand knowledge under such circumstances that a denial would be naturally expected if the statement were untrue and it is shown that he was in a position to hear and understand what was said and had the opportunity to speak, then his silence or failure to deny renders the statement admissible against him as an implied admission. (Citations omitted.)

288 N.C. at 406, 219 S.E. 2d at 184. It is clear from the testimony of Mr. Howie that at least one of the two defendants made the statements objected to by defendant Anthony. It is also apparent that Anthony was able to hear the statements and did not attempt to deny his involvement. In fact, Mr. Howie's testimony indicates that the statements were made by one defendant to the other. We therefore find that the statements testified to by Mr. Howie were admissible against defendant Anthony at least as implied admissions. In addition, any error could not have been prejudicial because Mr. Bobby Howie, the driver of the car, later testified to the same conversation without objection by the defendant Anthony. As a result, any benefit from the earlier ob-

jection was waived. *State v. Hunter*, 290 N.C. 556, 227 S.E. 2d 535 (1976), *cert. denied*, 429 U.S. 1093, 51 L.Ed. 2d 539, 97 S.Ct. 1106 (1977). This assignment of error is overruled.

Although defendant Anthony raised questions by his assignments of error numbers one, three and four, those questions are deemed abandoned because they were not discussed in his brief. *State v. Wilson*, 289 N.C. 531, 223 S.E. 2d 311 (1976). Rule 28(b)(5) of the Rules of Appellate Procedure states in part: "Exceptions in the record not set out in appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned."

GUILT PHASE—ANTHONY AND CRAIG

VIII.

[8] The defendants argue that they were denied a fair trial because the district attorney referred to them as "wolves" during his closing argument. Specifically the defendants object to the analogy employed by the State which compared them and their actions to a pack of wolves. The defendants failed to object to the closing argument of the prosecutor. "When a party fails to object to a closing argument we must decide whether the argument was so improper as to warrant the trial judge's intervention *ex mero motu. State v. Kirkley*, --- N.C. ---, --- S.E. 2d --- (filed 3 May 1983, p. 15). The standard of review is one of "gross impropriety." *State v. Johnson*, 298 N.C. 355, 259 S.E. 2d 752 (1979).

The law in this jurisdiction allows counsel wide latitude in arguing to the jury. Counsel may argue the law and the facts in evidence and all reasonable inferences arising therefrom but counsel may not interject facts and personal beliefs not supported by the evidence. *State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976); *State v. Monk*, 286 N.C. 509, 212 S.E. 2d 125 (1975). The defendants contend that the prosecutor was being abusive and interjecting his personal views and opinions when he compared them to a pack of wolves. We disagree with the defendants' argument.

[9] The prosecutor's remarks were not abusive and were not an attempt to place before the jury his personal beliefs or opinions. The references to wolves and wolfpack were made to illustrate by way of analogy how concert of action leads to each of the defend-

ants' responsibility for the murder of Edith Ritch. The analogy employed by the State is supported by the evidence presented and was phrased in a manner which was not inflammatory. As the Supreme Court of the United States has held, a prosecutor must prosecute cases in earnest and strike hard blows, although he may not strike foul ones. *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). In the case *sub judice* the prosecutor struck hard blows but they were not foul. As a result the trial court did not err by failing to intervene *ex mero motu* during the prosecutor's closing argument. This assignment of error is overruled.

IX.

**[10]** The defendants also contend that their right to a fair trial was denied when the prosecutor made reference to a witness who was not called to testify by either the State or the defendant. The prosecutor stated:

> Michael Moss, the ten-year-old boy didn't testify nor did we put him on the stand. Why? He was there the same as Mr. Carr and the same as Mr. Johnson. He's a ten-year-old boy. The ones best able to describe it, the adult and the man that's pushing adulthood. Four years makes a difference at that time. No, we didn't call Michael Moss. Don't you know if his statement was inconsistent you would have heard from him now.

The defendants maintain that the argument improperly placed before the jury facts, to-wit, Michael Moss' testimony, not supported by the evidence and was also an improper comment on their failure to produce witnesses. Once again the defendants have failed to object to the State's argument and therefore we look to see only if the argument was grossly improper requiring the trial judge to act *ex mero motu. State v. Johnson*, 298 N.C. 355, 259 S.E. 2d 752 (1979). We do not find the State's argument to be grossly improper.

The State is allowed to draw the jury's attention to the fact that the defendant failed to produce evidence which contradicts the State's case. *State v. Tilley*, 292 N.C. 132, 232 S.E. 2d 433 (1979). "It is permissible for the prosecutor to draw the jury's attention to the failure of the defendant to produce exculpatory

testimony from witnesses available to defendant." *State v. Thompson,* 293 N.C. 713, 717, 239 S.E. 2d 465, 469 (1977). Accord: *State v. Tilley,* 292 N.C. 132, 232 S.E. 2d 433 (1977). The prosecutor's remarks in the case *sub judice* were intended to make the jury aware that the State had not called Michael Moss to testify because his testimony would have added nothing to its case and that its evidence was uncontradicted. This is not error. This assignment of error is overruled.

SENTENCING PHASE — CRAIG

X.

[11] Defendant Craig contends that he was denied a fair sentencing because the prosecutor argued that Betty Jean Howie, a codefendant who testified on behalf of the State pursuant to a plea arrangement, had no prior criminal record. The defendant maintains that the prosecutor's reference to Betty Howie's lack of a prior criminal record was not supported by the evidence and was therefore improper. *State v. Monk,* 286 N.C. 509, 212 S.E. 2d 125 (1975). The witness, Betty Jean Howie, was subjected to an extensive cross-examination recorded in over one hundred pages of trial transcript. The prosecutor argued that there was no evidence presented at trial which would suggest that Betty Howie had a prior criminal record. The prosecutor was merely arguing an inference which could logically arise in light of the very thorough and lengthy cross-examination conducted by the defendants. Counsel is allowed to argue all facts in evidence and all reasonable inferences which may be drawn from those facts. *State v. Kirkley,* --- N.C. ---, --- S.E. 2d ---, (filed 3 May 1983). We find no error in the prosecutor's argument and therefore overrule this assignment of error.

XI.

[12] The defendant Craig also argues that it was error for the trial judge to instruct the jury that they could find from the evidence that the murder of Edith Ritch was especially heinous, atrocious and cruel as provided for by G.S. 15A-2000(e)(9). Defendant maintains that the evidence does not support this aggravating circumstance because the victim, with a blood alcohol level of .29, was so intoxicated that she must have been practically anesthetized against the torture of the thirty-seven stab wounds inflicted

with a pocket knife by the defendants. This argument is unsupported by any authority, it is meritless and we therefore overrule this assignment of error.

SENTENCING PHASE — ANTHONY

XII.

[13] During his argument to the jury the prosecutor, in reference to the mitigating circumstances which were to be submitted, stated:

> The first circumstance alleged by each of them is that he has no significant history of prior criminal activity. It's incumbent on the Court to submit to you, as our law would require. Have you heard any evidence whatever on that?

The defendant Anthony argues that it was prejudicial for the prosecutor to state; "Have you heard any evidence whatever on that?", because it was an improper comment on the existence of a statutory mitigating circumstance. At the time this statement was made the trial judge interrupted the prosecutor and called the parties to the bench. At this point the prosecutor corrected his statement and argued only the weight that such a mitigating factor should be afforded. In *State v. Kirkley*, --- N.C. ---, --- S.E. 2d --- (filed 3 May 1983) we stated that the weight a mitigating circumstance is assigned is entirely for the jury to decide. It follows that counsel is entitled to argue what weight circumstances should ultimately be assigned. Any error is harmless since the trial judge peremptorily instructed the jury that this mitigating circumstance existed in the case of each defendant. This assignment of error is overruled.

XIII.

Defendant Anthony also maintains that he was prejudiced by the trial judge's instructions to the jury concerning the weighing of aggravating and mitigating circumstances. We find that the instructions in this case were clear, concise, and consistent with those instructions upheld by this Court in *State v. Pinch*, 306 N.C. 1, 292 S.E. 2d 203 (1982), *cert. denied*, --- U.S. ---, 103 S.Ct. 474, 74 L.Ed. 2d 622 (1982) and *State v. Williams*, 305 N.C. 656, 292 S.E. 2d 243 (1982), *cert. denied*, --- U.S. ---, 103 S.Ct. 474, 74 L.Ed. 2d 622 (1982). We also note that defendant Anthony failed

to argue this assignment of error in his brief and it is deemed abandoned pursuant to Rule 28(b)(5) of the Rules of Appellate Procedure. We have nevertheless reviewed the instructions anyway and find no error. This assignment of error is overruled.

### SENTENCING PHASE — CRAIG AND ANTHONY

### XIV.

**[14]** The defendants argue that the trial court erred when it denied their motions to have the fact that they requested to take a polygraph test submitted to the jury as a mitigating circumstance. The mere fact that a defendant desires to take a polygraph test is not, standing alone, evidence of a mitigating circumstance. We have defined mitigating circumstances as:

> (A) fact or group of facts which do not constitute any justification or excuse for killing or reduce it to a lesser degree of the crime of first degree murder, but which may be considered as extenuating, or reducing the moral culpability of the killing or making it less deserving of the extreme punishment than other first-degree murders.

*State v. Irwin,* 304 N.C. 93, 104, 282 S.E. 2d 439, 446-47 (1981). The defendants contend that their own desire to take a polygraph test was some evidence from which the jury could have found as a mitigating factor their willingness to cooperate with the police. We disagree. There is no evidence that the State even suggested that the defendants take a polygraph test. A defendant's personal desire to submit to a polygraph examination, absent a police request, does not indicate a willingness to cooperate with the police. The record indicates that the request to take the polygraph test was solely self-serving. Such a request has no relevance to the question before the jury at the sentencing stage of this trial. We note that our recent decision in *State v. Grier,* --- N.C. ---, 300 S.E. 2d 351 (1983) makes polygraph test results incompetent for all purposes at trial. We therefore overrule this assignment of error.

### XV.

**[15]** The defendants also assert that the trial court erred by allowing the prosecutor to refer to them as "human animals" and members of a "wolfpack" during his closing argument at the

sentencing phase of the trial. Although no objection was raised by either defendant, the trial judge is under a duty to act *ex mero motu* if the argument is *grossly improper. State v. Kirkley*, --- N.C. ---, --- S.E. 2d --- (filed 3 May 1983); *State v. Johnson*, 298 N.C. 355, 259 S.E. 2d 752 (1979).

In *State v. Smith*, 279 N.C. 163, 181 S.E. 2d 458 (1971), this Court held that it was error for a prosecutor to characterize the defendant as "lower than the bone belly of a cur dog." 279 N.C. at 165, 181 S.E. 2d at 459. In *Smith*, however, the prosecutor made numerous remarks totally unsupported by the evidence. Some of the remarks in *Smith* concerned what the prosecutor thought about the defendant's character, that he didn't believe a word the defendant said and that he knew when a case called for the death penalty. The types of arguments proscribed by the law of this State and found as error in *State v. Smith, supra*, are those which place before the jury the personal beliefs or knowledge of counsel which are not supported by evidence presented at trial. *State v. Kirkley*, --- N.C. ---, --- S.E. 2d --- (filed 3 May 1983); *State v. Britt*, 288 N.C. 699, 220 S.E. 2d 283 (1975).

During his argument to the jury at the sentencing phase of the trial the prosecutor made the following statements:

> The course of conduct wherein Edith Ritch was killed was part of a course of conduct wherein the defendants acting as a wolfpack, a group of human animals, descended first on Seab Ritch, beat him mercilessly, continued to Edith Ritch, and there added only the knife to what they had done to Seab Ritch.
>
> *     *     *
>
> The extreme, overwhelming heinous brutality of this act echoes through the facts. The defendants, by their premeditated, cold-blooded, wolfpack acts, called for their own punishment, their own penalty.

In each instance where the prosecutor referred to the defendants as animals, he did so for a legitimate purpose supported by the evidence. In the first above cited statement the prosecutor was arguing how the evidence supported the aggravating factor that the murder was part of a course of conduct which included the

commission of crimes of violence against other people. G.S. 15A-2000(e)(11). Analogizing these defendants' acts to those of a wolfpack illustrates how each defendant was involved in this course of conduct. It was not designed to place before the jury, nor did it place before the jury, personal beliefs or knowledge not supported by the evidence. The evidence in this case clearly supports the prosecutor's analogy. In the prosecutor's second statement he was arguing that the defendants' senseless, cold-blooded actions were especially heinous, atrocious and cruel. The wolfpack analogy was supported by the evidence that Edith Ritch was extremely intoxicated, defenseless and not in any condition to identify them for their crime against her husband. Perhaps the prosecutor's analogy was a bit colorful but it was not error and was certainly not so grossly improper as would require the trial judge to act *ex mero motu.* We hold that the prosecutor's closing argument during the sentencing phase of this trial did not improperly place before the jury facts, beliefs or inferences not supported by the evidence. This assignment of error is overruled.

## XVI.

Pursuant to G.S. 15A-2000(d)(2) we have reviewed the record in this case in order to determine (1) whether the record supports all the aggravating circumstances upon which the jury based its sentence of death, (2) whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor and (3) whether the death penalty is an excessive or disproportionate punishment in light of similar cases, considering both the defendants and the crimes. As a result of our review of the record, the transcript and the briefs in this case, we find that each aggravating circumstance found by the jury is supported by the record. We also find that the death sentence imposed against each defendant is not the product of any passion, prejudice or other arbitrary factor which would require us to overturn the sentences.

In *State v. Williams,* --- N.C. ---, 301 S.E. 2d 335 (1983), we held, speaking through Justice Mitchell, that for purposes of proportionality review the case before the Court must be compared with "*all* cases arising since the effective date of our capital punishment statute, 1 June 1977, which have been tried as capital cases and reviewed on direct appeal by this Court. . . ." --- N.C.

at ---, 301 S.E. 2d at 355. (Original Emphasis.) We have carefully reviewed the briefs, the record and the transcript in this case and have compared this case with all similar cases which have been appealed to this Court. *State v. Williams*, --- N.C. ---, 301 S.E. 2d 335 (1983). The record before us reveals that these defendants participated in the brutal slaying of a heavily intoxicated woman who was utterly defenseless. After beating and robbing the victim's husband the defendants directed their attention to robbing the victim, Edith Ritch. When the victim told the defendants that she had no money the defendants jerked her from her vehicle and unleashed an unprovoked, cruel and brutal attack upon her. The defendants took turns stabbing the victim with a pocket knife inflicting thirty-seven wounds on her body as she begged for her life. These tortuous acts ceased only after Edith Ritch was completely and mercifully silenced by death. As the victim lay lifeless on the ground the defendants took her pocketbook and other belongings. The attack on Mrs. Ritch was carried out in an uncommonly brutal manner as the defendants willingly took turns inflicting mortal wounds. We believe that the imposition of the death penalty against each defendant is not disproportionate or excessive considering both the crime and these defendants. We therefore refuse to exercise our discretion and will not set aside the sentence of death imposed against each defendant.

In all phases of the trial below as to each defendant and as to each crime for which they were convicted we find no error.

No error.

Justice EXUM dissenting as to sentence.

Believing most strongly that it is error entitling defendants to a new sentencing hearing for the prosecutor in argument to characterize defendants as "wolves" and "human animals," I dissent from that portion of the majority opinion which finds no error in the sentencing phase of the case.

Throughout his arguments in both the guilt and sentencing phases of the case, the prosecutor repeatedly used the metaphor of a "wolfpack" in describing the actions of defendants. He argued, for example, as follows in the guilt phase:

As a wolfpack who chases down its quarry, who is the more responsible, the wolf that grabs the flank and holds or the wolf that grabs the neck and kills?

. . . .

The strength of the pack is the wolf, and the strength of the wolf is the pack.

. . . [C]ould a more accurate analogy be drawn than a wolfpack? . . . Edith Ritch never left there because a pack of humans acting as wolves descended on her, as they had previously descended on Seab Ritch.

. . . .

Like wolves of the pack they pounced on him, Betty just as much as the rest.

. . . .

Once the wolfpack had begun, once the beating of Seab Ritch was started, there became a frenzy.

Then in the sentencing phase the prosecutor continued with the metaphor:

The course of conduct wherein Edith Ritch was killed was part of a course of conduct wherein the defendants acting as a wolfpack, a group of human animals, descended first on Seab Ritch, beat him mercilessly, continued to Edith Ritch, and there added only the knife to what they had done to Seab Ritch.

. . . .

The defendants, by their premeditated, cold-blooded, wolfpack acts, called for their own punishment, their own penalty. . . . Not by anything you, the Court, or any witness did, but by their own hands, by their own acts, by their own merciless, vicious brutality, do they call for the only just penalty in this case, that the penalty of death be imposed.

Both the prosecutor at trial and the majority here refer to this argument as an analogy, apparently in an effort to accord it some kind of logical force. To be valid as an analogy, the argu-

ment would have to rest on these premises: wolves run in packs; all human beings act like wolves; therefore these defendants ran in a pack. Since the minor premise is obviously invalid, the argument fails as an analogy. The argument is nothing more than a metaphor in which human beings are likened to wolves. It has no logical force, but serves only to diminish the status of defendants in the eyes of the jury.

Both this Court and the Court of Appeals have strongly disapproved of prosecutors likening defendants to the animal kingdom in the trial of criminal cases. *State v. Smith*, 279 N.C. 163, 181 S.E. 2d 458 (1971); *State v. Brown*, 13 N.C. App. 261, 185 S.E. 2d 471 (1971), *cert. denied*, 280 N.C. 723, 186 S.E. 2d 925 (1972). *Smith* was a capital case in which defendant was convicted of rape and received life imprisonment at trial upon the jury's recommendation. In closing argument the prosecutor argued, among other things, that a person who did what defendant did is "lower than the bone belly of a cur dog." 279 N.C. at 165, 181 S.E. 2d at 459. The prosecutor also argued that he knew "when to ask for the death penalty and when not to"; he described a sexual assault case that he refused to prosecute; he called the defendant in argument a "liar"; and he disparaged the defendant's character witnesses. *Id.* at 165-66, 181 S.E. 2d at 459-60. For all of these transgressions this Court, in an opinion by Justice Higgins, awarded defendant a new trial on the question of his guilt. The Court quoted with approval from *Berger v. United States*, 295 U.S. 78, 88 (1935), as follows:

'The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.'

279 N.C. at 167, 181 S.E. 2d at 460. Although no objection was made at trial to the argument, this Court said, "The trial judge who heard the argument and failed to intervene on his own motion, was derelict in his duty." *Id.* at 167, 181 S.E. 2d at 461.

In *State v. Brown, supra,* 13 N.C. App. 261, 185 S.E. 2d 471, the Court of Appeals, in an opinion by then Chief Judge Mallard, expressly disapproved of the prosecutor's referring to defendant in closing argument as a "young animal," but did not under the circumstances of the case find the error sufficient to give defendant a new trial on the question of his guilt. *Id.* at 270, 185 S.E. 2d at 477.

Other courts have also disapproved of metaphors which liken human beings to animals. In ordering a new trial in a death case on other grounds, the Louisiana Supreme Court observed, for guidance on retrial, that "[T]he prosecutor also characterized the defendant as an 'animal,' an epithet which we have previously warned may constitute reversible error." *State v. Marshall,* 414 So. 2d 684, 688 n. 3 (La.), *cert. denied,* --- U.S. ---, 103 S.Ct. 468 (1982). The Pennsylvania Supreme Court, in a capital case in which the jury fixed life imprisonment as the punishment, gave the defendant a new trial because the prosecutor, among other things, referred to defendants as "hoodlums" and "animals." *Commonwealth v. Lipscomb,* 455 Pa. 525, 317 A. 2d 205 (1974). The Pennsylvania Court characterized such arguments as expressions of the prosecutor's personal belief in the accused's guilt which have no legitimate place in argument. *Id.* at 528, 317 A. 2d at 207.

Although I think it error, I would not award defendants a new trial on the question of their guilt because of the animal metaphor argument. The evidence of guilt is so overwhelming and uncontradicted by defendants at trial, that the result on the guilt phase would have been the same even without this argument. I strongly believe, however, that such an argument requires a new sentencing hearing.

In a capital case, the jury's decision to recommend death, a "recommendation" which is binding on the trial court under our procedure, is the most awesome decision one group of human beings can make about another human being. In the trial of a case in which this decision may be made, nothing should be permitted that dilutes the jury's terrible responsibility, or as this Court has

said through Justice, now Chief Justice, Branch, "lighten[s] [its] solemn burden." *State v. Hines*, 286 N.C. 377, 386, 211 S.E. 2d 201, 207 (1975). *See also State v. White*, 286 N.C. 395, 211 S.E. 2d 445 (1975). In *Hines* and *White* defendants who had received death sentences at trial were given new trials by this Court. In *Hines* the prosecutor during the jury selection process said to one juror, "And to ease your feelings, I might say to you that [no] one has been put to death in North Carolina since 1961." 286 N.C. at 382, 211 S.E. 2d at 204. *White* relied on *Hines* in finding similar reversible error in a prosecutor's argument that made reference to defendant's "automatic appeal to the Supreme Court of North Carolina . . . . If any error is made in this court, that Court will say." 286 N.C. at 402, 211 S.E. 2d at 449. In *White* the Court found reversible error in this argument notwithstanding the trial court's sustaining defendant's objection and instructing the jury to disregard the argument.

By the same reasoning, arguments to the jury in capital cases comparing defendants to animals subtly dilutes the jury's ultimate responsibility to say whether defendant shall live or die. Defendant after all is a human being created like the jurors themselves by God in His own image and given dominion over all other creatures. Genesis 1:26-28; 2:4-23. In making its life or death decision the jury's focus on defendant's humanity should not be blurred. If the jury recommends death, its full realization that it is a human being whom it has condemned to die must not be weakened. To suggest to the jury by animal metaphors in a capital case that a defendant is something less than human impermissibly deprives defendant of that status in the order of creation to which he or she rightfully belongs—a status of which the jury must not lose sight in making its life or death determination.

The animal metaphor argument in this capital case so tainted and diluted the jury's decision on the ultimate question of punishment that defendants, in my view, must be given new sentencing hearings. The argument is so fundamentally wrong that the trial judge should have corrected it on his own motion. *See State v. Smith, supra*, 279 N.C. 163, 181 S.E. 2d 458. Nor is the harm done lessened by the fact that some of this argument occurred in the guilt phase. *See State v. Hines, supra*, 286 N.C. 377, 211 S.E. 2d 201.

I also think the trial court committed reversible error in the sentencing phase when it refused defendants' requests to have their pretrial offer to take a polygraph examination submitted for the jury's consideration. '

In considering this question, the majority has not adopted the appropriate test in determining when a proffered mitigating circumstance should be submitted. The majority quotes only a definition of a mitigating circumstance from *State v. Irwin*, 304 N.C. 93, 104, 282 S.E. 2d 439, 446-47 (1981). The very next sentence in *Irwin* gives the appropriate test for whether a particular circumstance should be submitted. The appropriate test and a corollary are set forth in *Irwin* as follows:

> The U.S. Supreme Court has held that any aspect of defendant's character, record or circumstance of the particular offense which defendant offers as a mitigating circumstance should be considered by the sentencer. *Lockett v. Ohio*, 438 U.S. 586, 57 L.Ed. 2d 973, 98 S.Ct. 2954 (1978). However, evidence irrelevant to these factors may be properly excluded by the trial court. *Lockett v. Ohio, supra*, p. 604, n. 12.

304 N.C. at 104, 282 S.E. 2d at 447. This Court also held in *State v. Johnson*, 298 N.C. 47, 72, 257 S.E. 2d 597, 616 (1979), that upon proper request the trial court must submit to the jury any circumstance "that the jury could reasonably deem . . . to have mitigating value . . . ."

The question is, therefore, whether defendants' offer to take a polygraph examination during the investigative stages of this case is a circumstance relating to their character which a jury might reasonably deem to have mitigating value. I think it is such a circumstance. It is in the nature of an offer of cooperation with investigators much like defendant Craig's consent to the search of his home, which *was* submitted as a mitigating circumstance in his case.

The majority's reliance on *State v. Grier*, 307 N.C. 628, 300 S.E. 2d 351 (1983), holding polygraph test results inadmissible as evidence at trial even in the presence of a stipulation of admissibility, is misplaced. *Grier* overruled earlier cases holding that the parties could stipulate the admissibility of polygraph test

results. This was the law when defendants here made their offer to take the test. Their offer, therefore, should be considered in light of the law governing such offers at the time the offer was made. Further, even in *Grier* we noted that our holding was not intended to "affect the use of the polygraph for investigatory purposes." 307 N.C. at 645, 300 S.E. 2d at 361.

In this case when defendants offered to submit to polygraph examinations they presumably were aware that under the law at that time, the test result could be stipulated into evidence at their trials. Further, the polygraph test results might have been an aid in the investigation of these crimes, particularly in the investigator's efforts to determine more precisely the roles which defendants—as opposed to their accomplice and principal state's witness, Betty Howie—played in the crimes.

Thus, each defendant's offer to submit to polygraph testing was relevant to his character in that it was some evidence of his willingness to cooperate in the investigation of the murders. The jury should have been allowed to determine in each case whether the offer did constitute a mitigating circumstance.

Justice FRYE joins in this dissenting opinion.