STATE v. CANNADA

[119 N.C. App. 311 (1995)]

## II.

---

STATE OF NORTH CAROLINA v. PHILLIP MANNING CANNADA

No. 9314SC781

(Filed 20 June 1995)

## 1. Evidence and Witnesses § 1789 (NCI4th)— defendant's refusal to take polygraph exam—evidence admissible

Based on defendant's attorney's extensive questions pertaining to defendant's willingness to cooperate with authorities and

STATE v. CANNADA

[119 N.C. App. 311 (1995)]

the reference to the "Voluntary Consent to Identification Procedures" form which indicated defendant was willing to take a polygraph test, it was not error for the trial court to allow the prosecution to subsequently elicit testimony from the investigator that, although defendant initially agreed to submit to a polygraph test, he refused some days later.

**Am Jur 2d, Evidence § 742.**

**Propriety and prejudicial effect of comment or evidence as to accused's willingness to take lie detector test. 95 ALR2d 819.**

2. **Evidence and Witnesses § 294 (NCI4th)— prior unrelated drug use—no inadmissible evidence**

The trial court did not erroneously admit evidence of prior unrelated drug use by defendant where the investigator properly testified that he believed defendant was under the influence of "something" the evening of the murder; he was attempting to find out what that something might be; defendant stated that he had abused a prescription drug in the past; but defendant's response to the investigator's question did not indicate that he had been charged with any type of drug use or drug dealing by his use of the prescription drug.

**Am Jur 2d, Evidence § 408.**

3. **Evidence and Witnesses § 763 (NCI4th)— inadmissible hearsay—no prejudicial error**

Even though the trial court erred in allowing inadmissible hearsay concerning what the murder victim said about her will, defendant was not prejudiced where other similar evidence was properly admitted.

**Am Jur 2d, Evidence §§ 658-660.**

**Consideration, in determining facts, of inadmissible hearsay evidence introduced without objection. 79 ALR2d 890.**

Appeal by defendant from judgment entered 29 January 1993 by Judge Robert L. Farmer in Durham County Superior Court. Heard in the Court of Appeals 9 March 1994. Opinion filed by the Court of Appeals 3 May 1994. Heard in the Supreme Court 13 March 1995. Opinion filed by the Supreme Court 7 April 1995 reversing the opin-

**STATE v. CANNADA**

[119 N.C. App. 311 (1995)]

ion of the Court of Appeals. Remanded to the Court of Appeals for further consideration.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Francis W. Crawley, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Constance H. Everhart, for defendant-appellant.*

JOHNSON, Judge.

The facts of this case are reported at *State v. Cannada*, 114 N.C. App. 552, 442 S.E.2d 344 (1994), *rev'd*, 340 N.C. 101, 455 S.E.2d 158 (1995). In *Cannada*, defendant Phillip Manning Cannada was found guilty of the second-degree murder of Teresa Gilmore. Ms. Gilmore's body was found in the two-story home which she shared with defendant, her boyfriend, in Durham, North Carolina.

Our Court held that the State failed to prove by substantial evidence that the trial court erred by failing to dismiss the case at the close of the evidence because the evidence was insufficient as a matter of law to support defendant's conviction. The Supreme Court, in reversing our decision, remanded this case to our Court for consideration of any other issues properly raised in defendant's appeal. We now address those additional assignments of error and discuss only those facts necessary for the consideration of these issues on remand.

[1] Defendant argues that he was denied a fair trial by the trial court's admission of evidence that defendant refused to take a polygraph test. Arguing that "a defendant's willingness or unwillingness to submit to polygraph testing is not relevant to any question to be resolved by the jury[,]" *e.g.*, *State v. Craig and State v. Anthony*, 308 N.C. 446, 302 S.E.2d 704, *cert. denied*, 464 U.S. 908, 78 L.Ed.2d 247 (1983), defendant states that "the introduction of this evidence had much the same prejudicial effect as offering evidence that defendant took a polygraph but failed it." We disagree.

A review of the testimony at trial indicates that during direct examination by the State, Investigator Alvin Carter testified that while being questioned at the station, defendant stated he would be willing to take a polygraph test. On cross-examination, defendant's attorney asked Investigator Carter extensive questions pertaining to defendant's willingness to cooperate with authorities. In particular,

STATE v. CANNADA

[119 N.C. App. 311 (1995)]

defendant's attorney elicited testimony from Investigator Carter that defendant signed a form entitled "Voluntary Consent to Identification Procedures" which indicated defendant was willing to take a polygraph test. We note that "[w]here one party introduces evidence as to a particular fact . . . the other party is entitled to introduce evidence in explanation or rebuttal thereof, even though such latter evidence would be incompetent or irrelevant had it been offered initially." *State v. Rose*, 335 N.C. 301, 337, 439 S.E.2d 518, 538, *cert. denied,* —— U.S. ——, 129 L.Ed.2d 883 (1994) (*quoting State v. Albert*, 303 N.C. 173, 177, 277 S.E.2d 439, 441 (1981)). Therefore, based on defendant's attorney's extensive questions pertaining to defendant's willingness to cooperate with authorities and the reference to the "Voluntary Consent to Identification Procedures" form, it was not error for the trial court to allow the prosecutor to subsequently elicit testimony from Investigator Carter that although defendant initially agreed to submit to a polygraph test, days later, he refused. This assignment of error is overruled.

Defendant next argues that the prosecutor's closing argument impermissibly lessened the State's burden of proving defendant's guilt beyond a reasonable doubt, exceeding the limits of fair comment upon the law and the evidence, and thus depriving defendant of a fair trial. We have reviewed the referenced remarks that the prosecutor made to the jury during his closing argument and find that these remarks make no reference to the burden of proof required in this criminal case. We reject this assignment of error.

[2] Next, defendant argues the trial court committed reversible error by admitting evidence of prior unrelated drug use by defendant. Prior to trial, defendant had filed a motion *in limine* to exclude any evidence relating to drug use or drug dealing by defendant on the grounds that such evidence was not relevant. The trial court granted the motion but stated that if the issue became relevant, the ruling would be changed. A review of the transcript indicates that on direct examination, the following colloquy occurred between the prosecutor and Investigator Carter:

Q. Based on your observations of the defendant and your experience of some thirteen years as a police officer, did the defendant appear to be under the influence of something to you?

A. Yes, he did, and I asked him if he was under the . . . if he had ever taken drugs and he . . .

[DEFENDANT'S ATTORNEY]: Well, I object.

COURT: Well, as to whatever his answer was, overruled.

A.  [Defendant] stated that he had abused Dilaudid in the past.

Q.    Did he indicate whether he had taken any drugs on this occasion?

A.   He did not tell me that he was under the influence of Dilaudid at that time.

We do not believe the trial court erred by overruling defendant's objection and admitting this evidence. Investigator Carter believed that defendant was under the influence of "something" the evening of the murder, and he was attempting to find out what that "something" might be. Moreover, Dilaudid is a prescription drug which may be legally obtained and defendant's response did not indicate that he had been charged with any type of drug use or drug dealing by his use of Dilaudid. As such, we reject this assignment of error.

[3] Finally, defendant argues the trial court erred to defendant's prejudice by allowing the introduction of inadmissible hearsay concerning what Ms. Gilmore said about her will. Officer Carter testified that "[i]n talking to a Mr. Freeman, he advised that [Ms.] Gilmore did come down and talk with him in reference to her will and what he told me was that she decided to leave the will as it was and that she was going to tell [defendant] that she did change the will."

We find in this double hearsay instance that Mr. Freeman's statement to Officer Carter was hearsay and that therefore, the statement should not have been admitted at trial. We note that Ms. Gilmore's statement to Mr. Freeman may have been admissible under N.C.R. Evid. 803(3), the "state of mind" exception to the hearsay rule, had Mr. Freeman testified to the conversation. Nonetheless, although the trial court erred in admitting Officer Carter's testimony regarding this statement, we do not believe defendant has shown he was prejudiced to such an extent as to require a new trial. Other evidence was presented at trial regarding Ms. Gilmore's intention to leave her vehicles to defendant, and her intention to allow defendant to remain in her house if anything happened to her. Defendant, therefore, has not shown that a reasonable possibility exists that if the error had not been committed, a different result would have occurred at trial. *See State v. Harper*, 96 N.C. App. 36, 384 S.E.2d 297 (1989); *State v. Sills*, 311 N.C. 370, 317 S.E.2d 379 (1984). We reject this argument.

We find that defendant received a fair trial, free of prejudicial error.

Judges GREENE and JOHN concur.