STATE OF NORTH CAROLINA
v.
JERMAINE ANTONIO PRATT, Defendant.
No. COA03-1263
North Carolina Court of Appeals
Filed July 20, 2004
This case not for publication
Gaston County No. 01 CRS 58420.
Attorney General Roy Cooper, by Assistant Attorney General Amy C. Kunstling, for the State.
J. Clark Fischer, for defendant-appellant.
HUDSON, Judge.
Defendant Jermaine Antonio Pratt was charged with the first degree murder of Franklin Malker. Defendant admitted that he shot Malker at defendant's residence on the morning of 28 March 2001, but disputed the State's version of the circumstances surrounding the shooting. When Gastonia Police Department officers responded to defendant's house after the shooting, defendant told them that he shot an intruder who he feared would kill him. After being shot, Malker ran from defendant's home and collapsed in the street.
In his initial interview, defendant denied knowing the victim. In a later statement, however, defendant identified the victim as "Bunny," who lived in the Myrtle area of Gastonia. Defendantinsisted that he did not "really know the guy," but one of defendant's neighbors testified that Malker had dated defendant's wife. In addition, one of defendant's co-workers testified that Malker had visited defendant at his job and that they talked cordially for about ten minutes. Defendant denied such a visit. Finally, Officer Mike Lynch testified that he remembered seeing defendant and Malker in defendant's car together five or ten times when the two were teenagers.
Police recovered the gun defendant used in his living room near the front door. Officers found two .40 caliber shell casings outside the house near where defendant admitted he fired the shots.
The jury found defendant guilty of voluntary manslaughter. After finding three mitigating factors and no aggravating factors, the trial court sentenced defendant to a term in the mitigated range of 50-69 months imprisonment. Defendant appeals, arguing that the court committed plain error in allowing the State to present testimony that he refused to take a polygraph test. Defendant contends that the evidence was inadmissible and amounted to improper commentary on his exercising his Fifth Amendment right to remain silent. For the reasons stated below, we disagree.
Because defendant did not object to the testimony at trial, we review for plain error. We note that defendant waived his Fifth Amendment argument by failing to object on that basis or assign plain error to the testimony on constitutional grounds. N.C.R. App. P. 10(c)(4).
Our Supreme Court has defined plain error as "fundamentalerror, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or `where [the error] is grave error which amounts to a denial of a fundamental right of the accused.'" State v. Odom, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting United States v. McCaskill, 676 F.2d 995, 1002 (4th Cir. 1982), cert. denied, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)). When asserting plain error the defendant must show "'(i) that a different result probably would have been reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial.'" State v. Anderson, 355 N.C. 136, 142, 558 S.E.2d 87, 92 (2002) (quoting State v. Bishop, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997)).
It is well settled that the results of a polygraph test are inadmissible in this jurisdiction. State v. Hutchings, 139 N.C. App. 184, 189, 533 S.E.2d 258, 261, disc. review denied, 353 N.C. 273, 546 S.E.2d 381 (2000); State v. Gartlan, 132 N.C. App. 272, 280, 512 S.E.2d 74, 80, disc. review denied and appeal dismissed, 350 N.C. 597, 537 S.E.2d 485 (1999). This rule, however, does not make every reference to a polygraph prejudicial error. See Hutchings, 139 N.C. App. at 189, 533 S.E.2d at 261. For example, in State v. Cannada, 119 N.C. App. 311, 458 S.E.2d 268 (1995), an investigator testified for the State on direct examination that the defendant had stated his willingness to take a polygraph test. On cross-examination, the defendant's attorney questioned the investigator and elicited testimony regarding defendant's willingness to cooperate with the police and regarding defendant'ssignature on a "Voluntary Consent to Identification Procedures" form, which included a statement that the defendant was willing to take a polygraph test. On re-direct, the State elicited testimony from the investigator that although the defendant initially agreed to take the polygraph test, he later changed his mind and refused. The Court upheld the admission of the evidence that the defendant refused to take the polygraph test to explain and respond to the testimony, elicited by the defendant on cross-examination, about the defendant's willingness to cooperate with law enforcement. Id. at 313-14, 458 S.E.2d at 269.
Here, defendant's attorney asked Officer R.G. Williamson, one of the first responders to the scene, if defendant had cooperated in the investigation of the shooting. Officer Williamson answered, "Yes, sir." Later, the State asked Detective D.E. Gibson whether he had asked defendant on 10 April 2001 if he knew Malker before the shooting. In answering the question, the detective stated that defendant "agreed to take a polygraph on the 11th at 1400 hours. He was prior to coming [sic] to get sleep and a meal, not drink alcohol or take any controlled substances." The following exchange then occurred:
Q. Did Mr. Pratt come to the police station as scheduled?
A. Sir?
Q. You indicated that he agreed he would take a polygraph?
A. Yes, sir.
Q. Did Mr. Pratt come take that polygraph?
A. To my knowledge, no, sir, he did not.
As in Cannada, defendant's attorney put the issue of defendant's level of cooperation before the jury. The State was then free to present evidence pertaining to that issue.
After reviewing the record, we conclude that defendant has failed to show error in the court's admission of this testimony.
No error.
Judges STEELMAN and THORNBURG concur.
Report per Rule 30(e).