State v. Shook

STATE OF NORTH CAROLINA v. GILBERT M. SHOOK, JR.

No. 7812SC513

(Filed 7 November 1978)

1. **Constitutional Law § 31; Criminal Law § 5— mental capacity—motion for psychiatric fee denied—no error**

    The trial court did not abuse its discretion in denying defendant's motion for payment of fees for a psychiatric examination to determine defendant's ability, at the time of his alleged confession made shortly after the shooting in question, knowingly and understandingly to waive his rights and make a voluntary statement since it was within the exercise of the court's discretion for him to find that a psychiatric examination 2½ years after the shooting incident would not materially assist defendant in showing his mental condition at the time of the incident. G.S. 7A-450(b).

2. **Criminal Law § 75.14— defendant's statement—no hearing on motion to suppress—evidence of voluntariness sufficient**

    The trial court did not err in denying defendant's motion to suppress a statement made by defendant to police shortly after the shooting in question, though the court failed to hold a hearing on the motion, since defendant's psychiatric history was adequately before the court, and defendant showed no other evidence he would have offered to support his motion had a hearing been held; moreover, evidence was sufficient to support the court's conclusion that defendant's confession was voluntary where it tended to show that defendant was twice advised of his rights and asked if he had any questions; defendant said he understood and signed the waiver form; and defendant not only gave the officers a statement about the incident but also expressed his concern about the shooting victim.

3. **Criminal Law § 162— failure to object to evidence at trial—no consideration on appeal**

    Defendant cannot complain on appeal about a witness's testimony concerning a prior shooting incident involving defendant since defendant did not object to the testimony at trial.

4. **Criminal Law § 75— defendant "fixing to sign" confession—evidence improperly admitted**

    Though the trial court erred in allowing an officer to testify that defendant "was fixing to sign" a confession when his wife came in and stopped him, such error was not prejudicial in view of other evidence which tended to show that defendant willingly made the statement and indicated it was true.

5. **Criminal Law § 75.10— waiver of rights—opinion testimony improperly admitted**

    Opinion testimony by an officer that defendant appeared to understand and know what he was doing in waiving his rights and making a statement was improperly admitted, but such evidence was not prejudicial in view of other competent evidence of defendant's understanding.

APPEAL by defendant from *Godwin, Judge.* Judgment entered 17 January 1978 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 27 September 1978.

Defendant was charged with shooting into an occupied building and assault with a deadly weapon with intent to kill inflicting serious injury. On 2 February 1976, prior to arraignment, the defendant moved to suppress an alleged oral confession. The motion was denied, the court ruling that it was not timely. Defendant was then arraigned, tried immediately, and convicted on both charges. This Court found no error, 31 N.C. App. 749, 230 S.E. 2d 702 (1976), but the Supreme Court ordered a new trial due to the violation of G.S. 15A-943(b) whereby the defendant may not be tried without his consent during the week following his not guilty plea at arraignment. 293 N.C. 315, 237 S.E. 2d 843 (1978).

On 3 January 1978 defendant moved for payment of fees for a psychiatric examination, arguing to the court that there was a serious question of his ability at the time of his alleged confession to knowingly and understandingly waive his rights and make a voluntary statement. The court asked whether a motion to suppress had been filed and defense counsel answered that it had not because he wanted the information from the psychiatric examination to be in the affidavit accompanying the motion to suppress. The motion for payment of fees for a psychiatric examination was denied. Defendant was then arraigned.

On 9 January 1978 defendant filed a motion to suppress the alleged oral confession. This motion was supported by the affidavit of defense counsel, which said: (1) that at the time of his arrest defendant asked to talk to a lawyer, but that he was questioned without being allowed to do so; (2) that during March 1975 defendant had been diagnosed as "acute brain syndrome" and had received psychiatric treatment; (3) that in September 1975 defendant was diagnosed as "psychosis with unspecified physical condition"; (4) that in November 1975 defendant was discharged from Dorothea Dix Hospital with a diagnosis of alcohol addiction and a notation of mild mental retardation; (5) that due to his mental condition, the interrogation impaired his judgment and reasoning, making a voluntary waiver of rights or voluntary statement impossible; and (6) that defendant's mental condition and his voluntary abuse of alcohol impaired his recollection of the shooting and interrogation.

On 12 January defendant filed a second motion for payment of fees for a psychiatric examination. The court heard this motion and denied it, then considered the motion to suppress and denied it without a hearing, on the ground that everything in the first trial through the time of arraignment was valid, including the denial of the motion at that time. In the alternative the court denied the new motion in its discretion.

At trial the State presented evidence that sometime after 12:45 a.m. on 27 July 1975, Robert Louis Johnson was inside the Charcoal Tavern when shots from outside the building struck him, resulting in his permanent paralysis. On 28 July two police officers took the defendant into custody. Officer Campbell testified that he advised defendant of his *Miranda* rights and that defendant then tried to talk about the incident, but Campbell asked him to wait until they got to the Law Enforcement Center. When they arrived, defendant was again advised of his rights and asked if he had any questions. Defendant said he understood his rights and signed the waiver form. He then made the alleged confession that was the subject of the motion to suppress.

The statement was typed, but according to Campbell's testimony defendant's wife arrived at the time he "was fixing to sign the statement" and told him not to sign anything, that she would get a lawyer. The statement was never signed. At trial Officer Cook read from his notes of defendant's statement:

When I started up Gillespie Street, I spotted a car that I thought was a man's who pulled a gun on me about two weeks ago. When I seen the car at the Charcoal Diner, I went on home and got my .22 automatic rifle. My gun stays loaded at all times. I left my home with the gun and went back to the Charcoal Diner and was sitting in the parking lot waiting for him to come out. I waited and waited and never seen him come out. When I seen he didn't come out, I thought he was still inside, so everyone was leaving; I pulled up to the window about where the pool table is setting. I fired two or three times into the building. I fired through the passenger's side. I then left and went home. I then put the gun up and went back to the Crystal Drive-In and got up with a friend and went and got a six-pack of beer, came back to the Crystal Drive-In and then went home. I never told anyone what had happened.

Cook testified that the defendant read the statement after it was typed and said it was true. Cook was also allowed to testify over objection that at the time the defendant made the statement he appeared to understand his rights and know what he was doing.

Barbara Hubbard, who worked at the Charcoal Tavern, testified over objection about a shooting incident on 3 July 1975 involving Grady Yarborough and the defendant.

The defense presented no evidence. The defendant was convicted of both charges and sentenced to two 10-year terms to run consecutively, with credit on the first sentence for the time of his pretrial confinement. Defendant appeals.

*Attorney General Edmisten, by Associate Attorney Douglas A. Johnston, for the State.*

*Tye Hunter for defendant appellant.*


ARNOLD, Judge.

[1] The defendant assigns error to the denial of his motion for payment of fees for a psychiatric examination. He acknowledges that our courts have held that there is no constitutional right to have an expert witness to aid in an indigent's defense, *State v. Tatum*, 291 N.C. 73, 229 S.E. 2d 562 (1976), and that the decision to allow or deny an indigent defendant's motion for fees for an expert witness is within the discretion of the trial judge. *Id.*; G.S. 7A-454. However, G.S. 7A-450(b) states that "[w]henever a person . . . is determined to be an indigent person entitled to counsel, it is the responsibility of the State to provide him with counsel and the other necessary expenses of representation," and the defendant argues that under this section he was entitled to have his motion granted. Our Supreme Court has interpreted this statute to mean that such assistance need be provided "only upon a showing by defendant that there is a reasonable likelihood that it will materially assist the defendant in the preparation of his defense or that without such help it is probable that defendant will not receive a fair trial." *State v. Gray*, 292 N.C. 270, 278, 233 S.E. 2d 905, 911 (1977). The question, then, is whether the trial court properly applied this standard of "reasonable likelihood" in exercising its discretion by denying defendant's motion.

A discretionary order of the trial court will not be disturbed in the absence of abuse or arbitrariness. 1 Strong's N.C. Index 3d, Appeal & Error § 54. So it is not for us to determine whether the court *could* have ruled in defendant's favor, but whether it was *required* to do so. It appears from the record that defendant argued, at the hearing on the motion, the facts of his psychiatric history as set out in the affidavit in support of his motion to suppress. On those facts the judge was not required to grant the motion. It was within the exercise of his discretion for the court to find that a psychiatric examination 2½ years after the shooting incident would not materially assist the defendant in showing his mental condition at the time of the incident. Defendant refers us to *State v. Patterson*, 288 N.C. 553, 220 S.E. 2d 600 (1975), where the defendant was allowed fees for a second opinion after a state psychiatrist had pronounced him competent to stand trial, and argues that here he seeks only a first opinion. We note, however, that the purpose of the psychiatric examination in *Patterson* was to determine the defendant's mental condition at that time, the time he was to stand trial, not to establish a condition which might have existed 2½ years earlier. Here, defendant received psychiatric evaluation both four months before, and two and four months after, the shooting incident, and evidence of those diagnoses was before the judge when he ruled on the motion for fees. He quite reasonably may have concluded that such evidence, being closer in time to the shooting, was more probative of defendant's mental condition then than any current examination could be. The judge's ruling will stand.

[2]   We next turn to defendant's assertion that his motion to suppress the statement he made to the police was improperly denied. The judge based his denial on two grounds, in the alternative: (1) he considered that everything in defendant's first trial in 1976, up to and including arraignment, was valid, so that the denial of defendant's motion to suppress made before the first arraignment remained in force; or (2) he denied defendant's new motion in his discretion. We agree with the trial judge that everything up to and including the first arraignment remains valid for this trial. *See State v. Farrell*, 223 N.C. 804, 28 S.E. 2d 560 (1944). That may not settle the matter, however. The motion to suppress at defendant's first trial was denied on the ground that it was not timely; this was not a ruling on the merits and did not bar defendant

from renewing his motion at the proper time. The trial judge was incorrect when he indicated that he thought the earlier arraignment "cut off the Court having to rule on the present motion." The defendant was entitled to have his motion considered on its merits.

We believe, however, contrary to defendant's arguments, that the merits of his motion were sufficiently considered. It is true that the motion was denied without a hearing. It is also true, however, that consideration of the motion immediately followed the hearing on defendant's motion for payment of fees, and at that hearing defense counsel argued defendant's psychiatric history. In addition, that history was set out in an affidavit in support of the motion to suppress. We find that defendant's psychiatric history was adequately before the court, and since defendant has not shown us any other evidence he would have offered to support his motion had a hearing been held, we find that the merits were sufficiently considered.

Nor would we reverse the trial judge's ruling on the motion. The defendant argues that his mental condition at the time of his arrest made it impossible for him to understandingly, knowingly waive his rights and make a voluntary statement. Lack of mental capacity, while an important factor in determining voluntariness, does not of itself render incompetent a voluntary confession. *State v. Whittemore*, 255 N.C. 583, 122 S.E. 2d 396 (1961); *State v. Basden*, 19 N.C. App. 258, 198 S.E. 2d 494 (1973). The judge determined that the confession was voluntary, and evidence presented at trial supports that conclusion. Defendant was twice advised of his rights, and asked if he had any questions. He said he understood, and signed the waiver form. He not only gave the officers a statement about the incident, he expressed his concern. According to Officer Campbell: "Mr. Shook said he was sorry. . . . [H]e wanted to know if he could go out and make arrangements to see him, could he pay the hospital bill and asked me how bad was this man hurt." There is ample evidence in the record to support the judge's ruling on the motion.

[3] Defendant next objects to the admission of Barbara Hubbard's testimony about a prior shooting incident, alleging that it was irrelevant and prejudicial. We agree with the State that because defendant did not object to this testimony at the time it was admitted, he cannot now assign it as error. The record shows

that defendant objected to Ms. Hubbard's testimony that she had seen defendant at the Charcoal Tavern on 3 July, some three weeks prior to the shooting. He also objected and moved for *voir dire* when she testified that she knew a man named Grady Yarborough. There was then a bench conference and a conference in chambers about the content of Ms. Hubbard's testimony, after which the court announced that "the Court overrules the motion for voir dire hearing and will entertain and rule upon such objections as may hereafter be interposed by the Defendant." Defendant excepted to this, but failed to object during the remainder of Ms. Hubbard's testimony, which related to a shooting incident on 3 July involving Grady Yarborough and the defendant. "Where there is no objection . . . in the lower court . . . , appellant may not challenge the issues for the first time on appeal. . . ." 1 Strong's N.C. Index 3d, Appeal & Error § 24. *See Dale v. Dale*, 8 N.C. App. 96, 173 S.E. 2d 643 (1970); 4 Strong's N.C. Index 3d, Criminal Law § 162.

[4]  Defendant argues that it was error for the court to allow Officer Campbell to testify that defendant "was fixing to sign the statement" when his wife came in and stopped him. We agree. A witness may not give his opinion of another person's intention. 1 Stansbury's N.C. Evidence § 129 (Brandis Rev. 1973). The State argues that "fixing to" indicates preparation, not intention, but we find that a meaningless distinction here. Unless defendant were actually in the act of beginning to sign, of which there is no indication, any "preparation" must have been mental and thus not visible for Officer Campbell's observation. However, even where the evidence wrongly admitted is possibly prejudicial, "the burden is on the appellant not only to show error but to enable the court to see that he was prejudiced or the verdict of the jury *probably* influenced thereby." 1 Strong's N.C. Index 3d, Appeal & Error § 48 (emphasis added). Defendant did not make such a showing here, and we believe that he could not in view of the other evidence that tended to show that defendant willingly made the statement and indicated it was true.

[5]  Defendant is also correct in his contention that it was error for the court to admit Officer Cook's testimony that defendant appeared to understand and know what he was doing in waiving his rights and making a statement. What defendant understood "must be proved if at all by his actual responses, verbal or other-

wise, to the explanations given him of his rights." *State v. Patterson, supra* at 566, 220 S.E. 2d at 610. Opinion testimony by the officer is unacceptable. Nevertheless, here, as in *Patterson*, there is other competent evidence of defendant's understanding. Officer Campbell testified: "We read him his rights and asked him if he had any questions. He said he understood it and signed it." Also: "Mr. Shook indicated he understood his rights." Officer Cook testified that defendant signed the advisement of rights form, and that when the statement was typed: "I read it to him. Then I asked him if it was true. He said yes, sir." The admission of the testimony complained of, though error, was not prejudicial.

We have considered all of defendant's arguments, and have found no prejudicial error in the trial.

No error.

Judges VAUGHN and WEBB concur.