STATE OF NORTH CAROLINA v. WILLIAM RICHARD GARTLAN

No. COA98-518

(Filed 16 February 1999)

**1. Criminal Law— abandonment of attempted murder— instruction denied—no error**

The trial court did not err in a prosecution for attempted murder by denying defendant's request for jury instructions on the defense of abandonment. The evidence showed that defendant intended to kill his children; in furtherance of that purpose, while the children were in their beds at night, he started his car with the garage door closed and all of the children were exposed to carbon-monoxide poisoning, exhibiting physical symptoms from the exposure. Only after defendant observed his younger daughter turning blue did he decide that he could no longer continue; defendant's actions amounted to more than mere preparation to commit murder and he could not legally abandon the crime of attempted murder after committing these overt acts.

**2. Evidence— opinion that defendant's statement voluntary— admission not prejudicial error**

There was no prejudicial error in a prosecution for attempted murder in the trial court admitting a detective's opinion testimony that defendant's statements during an interview were voluntary and that the defendant understood his Miranda rights and the nature of the interview. Although the testimony was improper because it involved the issue of whether a legal standard had been met, there was other competent evidence regarding defendant's actions and demeanor after the attempted murder which supported the fact that he understood his rights and voluntarily confessed.

**3. Evidence— lay opinion—testimony regarding officers' ability to evaluate defendant's appearance**

The trial court did not err in an attempted murder prosecution by admitting opinion testimony from officers regarding their ability to evaluate defendant's appearance. The first detective's statement was made on redirect examination after defense counsel examined him as to whether he had any medical training or background and, as to the next detective, the prosecution anticipated such cross-examination and asked the detective on direct

examination whether he needed a medical background in order to make observations about defendant's appearance. These statements were not prejudicially argumentative.

**4. Homicide— attempted murder—evidence sufficient**

The trial court did not err by denying defendant's motion to dismiss charges of attempted murder of his children by leaving the car running in the garage with the door closed while they slept in their beds. There was substantial evidence of each element of attempted murder and of defendant being the perpetrator of the crime.

**5. Criminal Law— mistrial—polygraph**

The trial court did not err in an attempted murder prosecution by denying defendant's motion for a mistrial where a detective testified that he had told defendant during interrogation that it was his opinion that defendant was lying and another detective testified that defendant was asked to take a polygraph. The request to take a polygraph was neutral on its face and the testimony regarding the fact that a detective told defendant that he was lying combined with the statement regarding the polygraph does not create an inference that defendant took a polygraph and failed on the issue of guilt. It is significant that this evidence came from two different witnesses; moreover, the court took the appropriate action by giving a corrective instruction.

Appeal by Defendant from judgment entered 7 April 1997 by Superior Court Judge Peter M. McHugh in Guilford County Superior Court. Heard in the Court of Appeals on 14 January 1999.

*Malcolm Ray Hunter, Jr., Appellate Defender, by Mark D. Montgomery, Assistant Appellate Defender, for the Defendant.*

*Michael F. Easley, Attorney General, by Laura E. Crumpler, Assistant Attorney General, for the State.*

WYNN, Judge.

Sometime during the night of 19 August 1996, defendant William Richard Gartlan, an ordained minister with no criminal history, was awakened by his older daughter who informed him that his younger daughter was crying. In fact, the defendant's younger daughter was semiconscious and non-responsive. Additionally, his older daughter was experiencing difficulty breathing, and his son was completely unconscious.

STATE v. GARTLAN

[132 N.C. App. 272 (1999)]

The source of these difficulties was traced to the family's car which was running with the garage door closed. After turning off the car, defendant called 911. The emergency personnel treated them for carbon-monoxide poisoning. They were taken to the hospital and later released.

The next day, while being interviewed at the police station by Detective Bayliff, the defendant cried and confessed to attempting to kill himself and his three children by running his automobile in the closed garage. He stated that he had been depressed and that "he could not kill himself because the kids would be alone and have no one to take care [of] them. This was a way they could all be together." However, the defendant changed his mind after seeing his younger daughter turn blue with breathing difficulty.

The defendant signed a written statement prepared by Detective Saul which included the following concluding remarks:

> I knew the police would eventually ask what happened. I decided I would just tell the event that happened and just leave out the part about who started the car. In closing, I would like to say that I did do this; but, no words can say how sorry I am for it.

Additionally, a social worker called the police station on August 21 after the defendant told her:

> I know that I did this to myself and to the children what I've been accused of by the police and everyone else. But I guess I just wanted to convince myself that I did not do it.

The defendant was indicted for three counts of attempted first-degree murder. Following his conviction of these crimes, he brought this appeal contending that the trial court erred by: (1) failing to give instructions on the defense of abandonment, (2) admitting improper lay opinion testimony, and (3) denying his motions for dismissal, mistrial, and suppression of evidence. We find no prejudicial error.

I.

[1] The defendant first contends that the trial court erred in denying his written request for jury instructions on the defense of abandonment of the attempted murder crimes. We disagree.

"The elements of an attempt to commit any crime are: (1) an intent to commit the substantive offense, and (2) an overt act done

for that purpose which goes beyond mere preparation, but (3) falls short of the completed offense." *State v. Miller*, 344 N.C. 658, 667, 477 S.E.2d 915, 921 (1996). Specifically, a person commits the crime of attempted first-degree murder if: (1) he or she intends to kill another person unlawfully and (2) acting with malice, premeditation, and deliberation does an overt act calculated to carry out that intent, which goes beyond mere preparation, but falls short of committing murder. *See State v. Cozart*, 131 N.C. App. 199, 505 S.E.2d 906 (1998).

"In North Carolina, an intent does not become an attempt so long as the defendant stops his criminal plan, or has it stopped, prior to the commission of the requisite overt act." *Miller*, 344 N.C. at 669, 477 S.E.2d at 922. An overt act for an attempt crime,

> must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation. It must not be merely preparatory.

*State v. Price*, 280 N.C. 154, 158, 184 S.E.2d 866, 869 (1971).

Consequently, "[a] defendant can stop his criminal plan short of an overt act on his own initiative or because of some outside intervention." *Miller*, 344 N.C. at 669, 477 S.E.2d at 922. "However, once a defendant engages in an overt act, the offense is complete, and it is too late for the defendant to change his mind." *Id.*

The Court in *Miller* further stated that "[a]n abandonment occurs when an individual voluntarily forsakes his or her criminal plan prior to committing an overt act in furtherance of that plan." *Id.* at 670, 477 S.E.2d at 922. Thus, contrary to the defendant's contention, the Court in *Miller* did not abolish the common law defense of abandonment in North Carolina; rather, the Court clarified the limited application of the defense by holding that a person could not abandon an attempt crime once an overt act is committed with the requisite mental intent—a common-sense application because the crime of attempt is at that point already completed.

In the present case, the evidence showed that the defendant intended to kill his children. In furtherance of this purpose, while the children were in their beds at night, he started his car with the garage door closed. As a result, all of the children were exposed to carbon-monoxide poisoning. The children exhibited physical symptoms from the exposure—discoloration, difficulty breathing, semiconscious-

ness, and unconsciousness. Consequently, all of the children required medical treatment for carbon-monoxide poisoning. Only after the defendant observed his younger daughter turning blue did he decide that he could no longer continue with his plan to kill his children.

Certainly, defendant's actions amounted to more than mere preparation to commit murder. Following *Miller*, we conclude that after committing these overt acts, the defendant could not legally abandon the crime of attempted murder. Accordingly, we hold that the trial court did not err in failing to give the instructions on the defense of abandonment.

II.

The second issue on appeal is whether the trial court erred in allowing into evidence opinion testimony regarding: (1) the defendant's confessions and (2) the defendant's appearance. We hold that the admission of this evidence did not amount to prejudicial error in this case.

[2] First, the defendant contends that the trial court erred in admitting Detective Bayliff's opinion testimony that defendant's statements during the interview were voluntary and that the defendant understood his *Miranda* rights and the nature of the interview.

"Any witness 'who has had a reasonable opportunity to form an opinion' may give an opinion on a person's mental capacity." *State v. Daniels*, 337 N.C. 243, 263, 446 S.E.2d 298, 311 (1994) (quoting *State v. Evangelista*, 319 N.C. 152, 162, 353 S.E.2d 375, 383 (1987)). However, a witness may not "testify that a legal standard has or has not been met." *Id.* Thus, a witness can testify "as to whether the defendant had the capacity to understand certain words on the *Miranda* form, such as 'right' or 'attorney' but he may not testify as to whether the defendant had the capacity to waive his rights." *Id.*

In the case *sub judice*, Detective Bayliff's testimony concerning the voluntariness of defendant's statements during the interview were improper because this testimony involved the issue of whether a legal standard had been met. Further, the detective's testimony regarding whether the defendant understood his *Miranda* rights was tantamount to asking whether the defendant had the capacity to waive his rights. As a result, this too was improper testimony.

However, "every error is not so prejudicial as to warrant a new trial." *State v. Harrelson*, 54 N.C. App. 349, 350, 283 S.E.2d 168, 170

STATE v. GARTLAN

[132 N.C. App. 272 (1999)]

(1981). "Defendant must show that the error complained of was prejudicial and thereby affected the result adversely to him." *Id.* In *State v. Patterson*, 288 N.C. 553, 220 S.E.2d 600 (1975), *vacated in part on other grounds*, 428 U.S. 904, 96 S.Ct. 321, 49 L.E.2d 1211 (1976), our Supreme Court held that it was harmless error for the trial court to permit the interrogating officers to testify that in their opinion the defendant understood his rights.

Further, this Court, relying on *Patterson*, held in *State v. Shook*, 38 N.C. App. 465, 248 S.E.2d 425 (1978) that it was harmless error for the trial court to admit an officer's testimony that the defendant appeared to understand what he was doing in waiving his rights and making a statement. The errors by the trial court in *Patterson* and *Shook*, were not prejudicial because there was other competent evidence that the defendants in those cases understood what they were doing.

In the present case, like *Patterson* and *Shook*, there is other competent evidence regarding the defendant's actions and demeanor after the attempted murder which support the fact that he understood his rights and voluntarily confessed. For instance, the defendant drove himself to the police station and he was coherent with had no signs of carbon-monoxide poisoning such as nausea, headache, memory loss, or confusion. Given this evidence, we find the trial court's admission of Officer Bayliff's statements to be harmless error.

[3] Next, defendant contends that the trial court erred in overruling his objection to the opinion testimony regarding the officers' ability to evaluate his appearance. We find no error.

Specifically, the defendant points to the following questions asked by the prosecutor of Detective Saul:

Q. Now, Detective Saul based upon your years experience as a police officer, do you feel that you need to have specific medical background or psychiatric background to be able to observe a human being such as Mr. Gartlan for the time that you did observe him and be able to determine for yourself whether or not he appears normal?

A. I don't feel like I need that just to look at someone and give my opinion as to whether they're normal or not.

Additionally, defendant points to a similar line of questioning of Detective Ledford in which he was asked:

Q. You've been involved in a good many interviews in your years as a police officer, have you not?

A. Yes, I have.

Q. Seen a good many different types of people?

A. Wide variety of people.

Q. And do you have any specialized medical or psychiatric background?

A. I do not.

Q. Do you feel you need it to observe people and whether or not how they appear to you?

A. Through years of police experience I've observed a number of people in all types of behavior, and I do not feel I need any other thing than experience.

Defendant contends that these were argumentative statements and therefore should not have been allowed. In support of his argument, he cites *State v. Lovin*, 339 N.C. 695, 454 S.E.2d 229 (1995) (holding the objection was properly sustained to the detective's cross examination as to whether the defendant was led to believe during the course of the interview that he did not need a lawyer on the grounds that the question was argumentative) and *State v. Pope*, 24 N.C. App. 217, 210 S.E.2d 267 (1974) (holding the cross-examination question of victim's brother was argumentative. The question concerned the brother's realization that if he had anything to do with starting the argument with the defendant leading to victim's death, the brother's family might hold him responsible for victim's death.).

However, the holdings of *Lovin* and *Pope* are not controlling in this case because the statements in the case *sub judice* were made in a different context. First, Detective Saul's statement was made on redirect examination after the defense counsel examined him as to whether he had any medical training or background. After Detective Saul's cross examination, the prosecution, in anticipation of such cross examination, asked Detective Ledford on direct examination whether he needed a medical background in order to make observations about the defendant's appearance. In this context, we conclude that these statements were not prejudicially argumentative. Accordingly, we reject defendant's second argument.

STATE v. GARTLAN

[132 N.C. App. 272 (1999)]

## III.

**[4]** Defendant next contends that the trial court erred in denying his motion to dismiss because the State failed to meet its burden of producing substantial evidence of the essential elements of attempted murder.

When a defendant moves for dismissal, "the trial court [must] determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991). In determining whether the State's evidence is substantial, the trial court must examine the evidence in the light most favorable to the State, and the State is entitled to every reasonable inference and intendment that can be drawn therefrom. *See State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980)).

"Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *State v. Rogers*, 109 N.C. App. 491, 504, 428 S.E.2d 220, 228 (1993) (quoting *State v. Smith*, 300 N.C. 71, 78, 265 S.E.2d 164, 169 (1980)). Therefore, "[t]he State's evidence must do more than raise merely a suspicion or conjecture as to the existence of the necessary elements of the charged offense." *State v. Stanley*, 310 N.C. 332, 340, 312 S.E.2d 393, 397-98 (1984).

In the present case, the defendant's older daughter testified that the defendant was the last one to drive the car prior to the incident and that there was only a single key to the car which was given to the officers on that night. Further, the defendant confessed to the crime during his interview with Detective Bayliff. Thereafter, the defendant signed a written statement which included a confession. Additionally, a social worker testified as to defendant's incriminating statements made to her.

Although the defendant presented expert testimony to suggest that he was under the influence of carbon-monoxide poisoning at the time of his confessions, none of the expert witnesses examined the defendant prior to his confessions. Moreover, there is evidence that immediately following the incident, the defendant was coherent and seemed to be under no such influence.

Examining the evidence in the light most favorable to the State, we find substantial evidence of each element of attempted murder and of the defendant being the perpetrator of the crime. Accordingly,

we hold that there was no error in the trial court's denial of defendant's motion to dismiss.

## IV.

**[5]** Next, defendant contends the trial court erroneously denied his motion for a mistrial. He asserts that during his trial, the State improperly presented the following evidence: (1) Detective Bayliff's testimony that he told the defendant during the interrogation that it was his opinion that the defendant was lying, and (2) Detective Leford's testimony that prior to defendant's interview with Bayliff the defendant was asked to take a polygraph. According to the defendant, the cumulative effect of this evidence was to cause the jury to believe that the defendant had taken a polygraph and had failed on the question of his guilt.

"The [trial] judge must declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings . . . resulting in substantial and irreparable prejudice to the defendant's case." N.C. Gen. Stat. § 15A-1061 (1988). In essence, "[a] mistrial is appropriate only when there are such improprieties as would make it impossible to attain a fair and impartial verdict." *State v. Harris*, 323 N.C. 112, 125, 371 S.E.2d 689, 697 (1988).

Under North Carolina law, the results of a polygraph test are inadmissible in any trial. *See State v. Foye*, 254 N.C. 704, 120 S.E.2d 169 (1961). "However, every reference to a polygraph test does not necessarily result in prejudicial error." *State v. Montgomery*, 291 N.C. 235, 244, 229 S.E.2d 904, 909 (1976).

For instance, in *Harris, supra,* our Supreme Court held that a witness' statement that the defendant was asked to take a polygraph was neutral on its face and did not constitute an abuse of the trial court's discretion in denying the defendant's motion for a mistrial.

In the present case, like *Harris*, Detective Ledford's testimony concerns a request to submit to a polygraph which is neutral on its face. Further, Detective Bayliff's testimony regarding the fact that he told the defendant during the interview that he was lying combined with Detective Ledford's statement does not create an inference that the defendant took a polygraph and failed on the issue of guilt.

Significantly, this evidence came from two different witnesses. Moreover, the trial judge following Detective Ledford's inadvertent

reference to the polygraph took the appropriate action to prevent any such inference by giving these instructions:

> Ladies and gentlemen, that reference by the detective is inadmissible for any purpose. You may not consider it for any purpose in the furtherance of your deliberations.

If any possible prejudice resulted from the testimony at issue, the trial court's cautionary instructions removed this prejudice; therefore, no improprieties exist which made it impossible for the defendant to attain a fair and impartial verdict. Thus, the trial court committed no prejudicial error in denying defendant's request for a new trial.

Finally, we summarily hold that there is no merit to defendant's contention that the trial court erred by not suppressing his confessions on the grounds that these confessions were not voluntarily made and resulted from carbon-monoxide poisoning.

We conclude that the defendant received a fair trial that was free from prejudicial error.

No prejudicial error.

Judges HORTON and EDMUNDS concur.