An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-966

NORTH CAROLINA COURT OF APPEALS

Filed:  6 May 2014

STATE OF NORTH CAROLINA

    v.

JEREMIAH LAMONT LUKE

Mecklenburg County
No. 11 CRS 207253


Appeal by defendant from judgment entered 20 December 2012 by Judge Eric L. Levinson in Mecklenburg County Superior Court. Heard in the Court of Appeals 31 March 2014.

> *Roy Cooper, Attorney General, by Scott T. Slusser, Special Deputy Attorney General, for the State.*
>
> *Anne Bleyman for defendant-appellant.*


DAVIS, Judge.

Defendant Jeremiah Lamont Luke ("Defendant") appeals his conviction for attempted trafficking in at least 400 grams of cocaine by possession.  On appeal, he contends that the trial court erred by (1) denying his motion to dismiss the charge for insufficient evidence; and (2) failing to instruct the jury on abandonment.  Defendant gave notice of appeal in open court.

After careful review, we conclude that Defendant received a fair trial free from error.

**Factual Background**

The State's evidence tended to show the following: On 11 February 2011, Charlotte-Mecklenburg Police Officer Gresham Wilhelm ("Officer Wilhelm") and Detective Rolando Ortiz ("Detective Ortiz") led an undercover narcotics operation known as a "reversal," in which Detective Ortiz offered to sell Defendant one kilogram, or "ki[,]" of cocaine for $32,000. Through an intermediary, Terry Harrell ("Harrell"), Detective Ortiz arranged to meet Defendant in the parking lot of a Target department store on Albemarle Road in Charlotte, North Carolina. They were then to proceed to Detective Ortiz's residence to weigh and test the cocaine and to count the purchase money.

Officer Wilhelm and his partner stationed their patrol car on Albemarle Road approximately one block away from the Target parking lot. Surveillance officers observed a suspect arrive in the parking lot in a Chevrolet Tahoe that was registered in Defendant's name.

After "[a] phone call was placed[,]" Detective Ortiz drove into the parking lot and parked his vehicle beside the Tahoe. Defendant was driving the Tahoe, and Harrell was in the front

passenger's seat. Detective Ortiz greeted Defendant, sat down in the Tahoe's back seat, and asked him: "Have you got the stuff?" Defendant reached behind the seat and produced "a white bag with a large amount of currency in it[.]" Detective Ortiz indicated his approval, closed the bag, and told Defendant: "Follow me." He then returned to his own vehicle and exited the parking lot onto Albemarle Road, followed by Defendant.

Officer Wilhelm observed "Detective Ortiz's truck pass [his] location and saw . . . [D]efendant's black Chevy Tahoe following him outbound [on] Albemarle Road past [his] location." While maintaining visual contact with the two vehicles, Wilhelm pursued Defendant through traffic for approximately three quarters of a mile. When Wilhelm's marked patrol car was situated directly behind Defendant's Tahoe at a stop light, Detective Ortiz turned left off of Albemarle Road. Defendant proceeded straight on Albemarle Road and was stopped by Officer Wilhelm "almost immediately." A search of Defendant's vehicle yielded "several cell phones" and "a white JanSport book bag . . . in the back right passenger's seat that was unzipped and had a large sum of U.S. currency" totaling $31,700 inside.

Defendant was questioned at the Department's Hickory Grove Division by Detective Jimmy Neil Messer ("Detective Messer").

After initially claiming that he had gone to the Target parking lot to purchase four pounds of marijuana for $32,000, Defendant "changed his story" and admitted "that he was there to purchase a kilo of cocaine." Defendant also told Detective Messer that he had planned to divide the cocaine into 3.7-gram increments called "eight-balls"[1] and sell them. A recording of Detective Messer's interview of Defendant was played to the jury.

## Analysis

### I. Denial of Motion to Dismiss

Defendant first challenges the trial court's denial of his motion to dismiss the charge due to a lack of sufficient evidence. We review the court's ruling *de novo*. *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007).

> [T]he trial court must determine whether substantial evidence has been presented in support of each element of the charged offense. The evidence is to be considered in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn from that evidence.

*State v. Nabors*, 365 N.C. 306, 312, 718 S.E.2d 623, 626 (2011) (citations and internal quotation marks omitted). "The trial court must also resolve any contradictions in the evidence in

---

[1] Detective Messer explained that "an eight-ball of cocaine is known to be 3.7 grams[.]"

the State's favor." *State v. Parker*, 354 N.C. 268, 278, 553 S.E.2d 885, 894 (2001), *cert. denied*, 535 U.S. 1114, 153 L.Ed.2d 162 (2002).

The elements of trafficking in 400 grams or more of cocaine by possession are (1) knowing possession of cocaine (2) that weighs at least 400 grams. *See* N.C. Gen. Stat. § 90-95(h)(3)(c) (2013); *State v. White*, 104 N.C. App. 165, 168, 408 S.E.2d 871, 873 (1991). "'The elements of an attempt to commit any crime are: (1) an intent to commit the substantive offense, and (2) an overt act done for that purpose which goes beyond mere preparation, but (3) falls short of the completed offense.'" *State v. Gartlan*, 132 N.C. App. 272, 274-75, 512 S.E.2d 74, 76-77 (quoting *State v. Miller*, 344 N.C. 658, 667, 477 S.E.2d 915, 921 (1996)), *appeal dismissed and disc. review denied*, 350 N.C. 597, 537 S.E.2d 485 (1999).

Defendant first claims an absence of evidence that he intended to possess cocaine. He points to his statement to Detective Messer that he was meeting Detective Ortiz in order to purchase four pounds of marijuana. Though Defendant later acknowledged that he planned to purchase a kilogram or "ki" from Ortiz, he notes that neither he nor Detective Messer ever mentioned "cocaine" during their interview. Defendant suggests

that the term "ki" could just as easily have referred to a kilogram of marijuana.

We are not persuaded by Defendant's argument. Both Officer Wilhelm and Detective Ortiz testified that the arrangement between Defendant and Detective Ortiz was the purchase of a kilogram of cocaine for $32,000. The State adduced evidence that $32,000 was a "legit[imate] price" for this quantity of cocaine but far above the going rate for four pounds of even the most "exotic" marijuana. Detective Messer further testified that Defendant's use of the term "eight-ball" denoted "3.7 grams of cocaine" in the drug trade and was not "used to refer to marijuana[.]" Although Defendant cites in his brief to case law from another jurisdiction suggesting that "eight-ball" could signify either cocaine or marijuana, the jury was free to credit the testimony of Charlotte-Mecklenburg police officers familiar with the local jargon. Inasmuch as "[i]ntent must normally be proved by circumstantial evidence," *State v. Barlowe*, 337 N.C. 371, 379, 446 S.E.2d 352, 357 (1994), we find the State's evidence supported a reasonable inference that Defendant intended to possess cocaine when he met Detective Ortiz.

Defendant also challenges the evidence that he committed an "overt act" in furtherance of his intended possession of

cocaine, as required to establish an attempt. *Miller*, 344 N.C. at 667, 477 S.E.2d at 921. "An overt act for an attempt crime . . . must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation. It must not be merely preparatory." *Gartlan*, 132 N.C. App. at 275, 512 S.E.2d at 77 (citation omitted). "In other words, while it need not be the last proximate act to the consummation of the offense attempted to be perpetrated, it must approach sufficiently near to it to stand either as the first or some subsequent step in the direct movement towards the commission of the offense after the preparations are made." *State v. Addor*, 183 N.C. 735, 736, 110 S.E. 650, 651 (1922) (citation and quotation marks omitted).

We conclude the State offered substantial evidence of an overt act by Defendant sufficient to constitute an attempt to possess a kilogram of cocaine. Even assuming *arguendo* that Defendant's arrangement of the transaction through Harrell may be fairly described as merely preparatory, Defendant's subsequent conduct of meeting Detective Ortiz – a stranger – at the appointed place, presenting the $31,700 in purchase money, letting Ortiz into his vehicle, and then following him toward the agreed-upon exchange site represented at least the "first .

. . step in the direct movement towards the commission of the offense after the preparations [we]re made." *Id.* Accordingly, we hold the trial court properly denied Defendant's motion to dismiss.

## II. Refusal to Give Jury Instruction on Abandonment

Defendant next claims the trial court erred in denying his request for a jury instruction on the doctrine of abandonment.[2] We disagree. In *Miller*, our Supreme Court made clear that a defendant has no right to an abandonment defense once he has completed, with the requisite intent, an overt act in furtherance of a crime. *Gartlan*, 132 N.C. App. at 275, 512 S.E.2d at 77 ("'[O]nce a defendant engages in an overt act, the [attempt] offense is complete, and it is too late for the defendant to change his mind.'" (quoting *Miller*, 344 N.C. at 669, 477 S.E.2d at 922)).

In light of our conclusion — as discussed above — that Defendant committed an overt act toward trafficking in cocaine by possession, we further conclude he was not entitled to an abandonment instruction. While Defendant notes that he ceased following Detective Ortiz's vehicle when Officer Wilhelm's

---

[2] By requesting the instruction and obtaining an unfavorable ruling at the charge conference, Defendant properly preserved this issue for our review. *Roberts v. Young*, 120 N.C. App. 720, 726, 464 S.E.2d 78, 83 (1995) (citing N.C.R. App. P.10(b)(2)).

patrol car appeared behind his Tahoe, this action came "too late" to constitute an abandonment of his offense. *Miller*, 344 N.C. at 669, 477 S.E.2d at 922.

## Conclusion

For the reasons stated above, we conclude that Defendant received a fair trial free from error.

NO ERROR.

Judges McGEE and ELMORE concur.

Report per Rule 30(e).